UNITED STEELWORKERS OF AMERICA, AFL–CIO, LOCAL 6218,
Plaintiff and Appellee, *v.* PAULA SHOE CO., INC., ET AL.,
Defendants and Appellants.

No. R-65-239.     Decided June 24, 1966.

McConnell, Valdés & Kelley, and *Heber E. Lugo* for appellee.
*Francisco Aponte Pérez* for appellants.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Two questions are raised in the present appeal, namely, (a) whether the trial court had jurisdiction to enforce an arbitration award construing a bargaining agreement clause and, (b) whether said construction is applicable to subsequent agreements.

Let us consider the facts of the case. Section 10 of the agreement signed by Paula Shoe Co. Inc., Gentry Shoe Co. Inc., (hereinafter designated as respondents) with the Unión de Trabajadores de Muelles y Ramas Anexas de Ponce, Puerto Rico, Local 1903, (AFL–CIO), known as UTM, on August 12, 1959, retroactive to April 27, 1959 and in effect until December 31 of said year, provided that "The Company agrees that effective April 27, 1959, it will grant a 5% increase on all the piece rates in effect on April 24, 1959, and that an increase of 5% will be granted to all employees within the bargaining unit which are paid by the hour." Later, the parties signed another agreement for the years 1960–62, which provided that: "The Company agrees that effective January 1, 1960, it will grant a 5% increase on all the piece rates in effect on January 1, 1960, and that an increase of 5% will be granted to all the employees within the bargaining unit who are paid by the hour." On December 18, 1962, the respondents and the United Steelworkers of America (AFL–CIO) signed another collective bargaining agreement retroactive to July 9, 1962 and effective until

July 9, 1964. It provided that the company granted another 5% increase on all the base piece rates thus bringing the formula on piece prices, as of July 9, 1962, to base plus 19%; that effective from the first day of the second year of this agreement the company will grant an additional 4% increase on all base piece rates, thus bringing the formula in effect on the last day of the first year of the contract to the base plus 23%. Similar increases were agreed upon in this agreement as to workers in hourly rated so-called "non-incentive jobs." Lastly, on January 16, 1965, a collective bargaining agreement was signed retroactive to July 9, 1964, and effective until July 9, 1966, in which the company agreed to grant a 4½% increase on all the base piece rates, thus bringing the formula as of July 9, 1964, to base plus 27½%. A similar increase was also agreed upon for the employees paid by the hour. In this same agreement the company granted an additional 4% increase, thus bringing the formula as of July 9, 1965, to base plus 31½%. A similar increase was granted to workers paid by the hour.

On September 15, 1960 the parties submitted the following question to arbitration:

"To determine whether the Company is bound to pay the workers engaged in piecework but who do not produce sufficient piecework in the forty hours to cover the federal minimum, the 5% increase established in § 10 of the collective bargaining agreement in relation to the federal minimum wage of 59 cents per hour and $23.60 for 40 hours of work per week."

On October 7, 1960 the arbitrator rendered the following award:

"It is determined that the Company is bound to pay the laborers engaged in piecework, but who do not produce sufficient piecework in the 40 hours to cover the federal minimum, the increase of 5% established in § 10 of the collective bargaining agreement in relation to the federal minimum wage of 59 cents per hour and $23.60 for 40 hours of work per week."

Considering this award to be erroneous, the company requested a hearing before the arbitrator to discuss the errors assigned, but the latter notified the company that he could not reopen the case since the UTM objected. Since the employer refused to make the award effective, the UTM resorted to the Labor Relations Board on February 1, 1961, requesting it to enforce said award. On September 27 of the same year the Board decided that "in the exercise of the discretion granted by § 9 (2) (c) of the Act, it considers that under the circumstances in which said award was issued it is not advisable to help to enforce it."

On April 20, 1965, United Steelworkers of America (AFL–CIO), Local 6218, petitioner in this case, hereinafter designated as the petitioner, filed a complaint in the Superior Court, San Juan Part, alleging, in synthesis, that respondents have failed to comply with said award and have not paid to the pieceworkers the progressive increases provided in the aforesaid collective bargaining agreements. They prayed for judgment in the amount resulting from the study of respondents' payrolls and records, and like amount for liquidation of damages, costs, and a reasonable amount for attorney's fees. Respondents requested summary judgment on July 8, 1965, alleging that the court lacked jurisdiction to enforce the aforesaid arbitration award, since what appears from the face of the complaint is an alleged unfair labor practice, the Labor Relations Board being the forearm provided by law to take cognizance of this matter; furthermore, that the petitioner is not the UTM because it is not and never was a party in the collective bargaining agreement which gave rise to the right to arbitrate and, therefore, could not request the enforcement of the award in question. On its part, petitioner requested interlocutory summary judgment on July 21, 1965.

In its amended summary judgment rendered on October 20, 1965, the trial court concluded that:

"As to the period comprised between April 27, 1959, and July 9, 1964, respondent's motion for summary judgment to dismiss the complaint is hereby denied. That part of the claim which refers to services rendered subsequent to July 9, 1964, must be submitted to arbitration and therefore, as to that part judgment is rendered dismissing the complaint. Petitioner's motion requesting interlocutory summary judgment is denied."

Feeling aggrieved and in support of its petition for review, petitioner alleges that:

"(a) The court erred in denying the motion for interlocutory summary judgment on the ground that it lacked jurisdiction to order the enforcement of the award of October 7, 1960 in concluding that the power to do so was exclusively reserved to the Labor Relations Board and the Supreme Court pursuant to the provisions of Section 9(2)(c) of the Labor Relations Act of Puerto Rico. The judgment is contrary to the local statutory law and the case law established by the Supreme Court of Puerto Rico in the cases of *Labor Relations Board* v. *New York & P. R. S. S. Co.,* 69 P.R.R. 730, 737 (1949); *Asociación de Guardianes* v. *Bull Lines,* 78 P.R.R. 680, 684–685 (1955).

"(b) The court erred in failing to decide that in actions for the enforcement of arbitration awards issued by virtue of a collective bargaining agreement signed by an enterprise in interstate commerce, like respondents herein, the jurisdiction of the local court is concurrent with that of the federal court under section 301 of the Taft-Hartley Act, pursuant to the rulings established by the Supreme Court of Puerto Rico in the case of *Puerto Rico Telephone Co.* v. *Labor Relations Board,* 86 P.R.R. 362, 373 (1962), and by the Supreme Court of the United States in the cases of *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502, and *Smith* v. *Evening News Assn.,* 371 U.S. 195 (1962). Under said doctrine the local forum has been concurrently available for actions for the enforcement of collective bargaining agreements including enforcement of arbitration awards.

"(c) The court erred in denying the motion for interlocutory summary judgment presented by petitioners refusing to enforce the arbitration award, and in granting respondent's motion for summary judgment to dismiss that part of the complaint subsequent to July 9, 1964, and ordering instead, the arbitration thereof."

■ 1.—First, we must determine whether the arbitration award rendered on October 7, 1960, is valid and effective. Respondents argue that it is not, because the arbitrator did not take into consideration the submission agreement as a whole, because he based the award on an incorrect agreement, and because his conclusion that the agreement provides for a 5% increase on the weekly wages of pieceworkers constitutes an error of fact, since the agreement clearly provides that that increase shall be on the piece rate. It does not appear from the record that the arbitrator failed to consider as a whole the submission agreement previously copied, nor that he did not have before him the correct text of the agreement on the ground that it does not appear from the award that he took into consideration § 9 of the agreement. We have been unable to verify the existence of any of the grounds on which an award may be impeached, as we stated in *Labor Relations Board* v. *N.Y. & P.R.S.S. Co.,* 69 P.R.R. 730, 745–746 (1949). No error of fact or of law of the arbitrator is ground for impeachment except that where the parties in the submission provide that the arbitrator shall decide according to law, the latter must follow rules of law and make his award in accordance with the prevailing legal doctrines. *Labor Relations Board* v. *Cooperativa Cafeteros,* 89 P.R.R. 487 (1963). In any event the arbitrator did not commit the error of fact charged, since the alleged error on which it is based is rather an expression of his interpretative criterion of the first agreement under consideration, that is, that the increase provided in the agreement on all piece rates must be made on weekly wages of the workers engaged in piecework but "who do not produce sufficient piecework in the 40 hours to cover the federal minimum." Therefore, we lack authority to set aside the arbitration award in question. *Labor Relations Board* v. *Sindicato Obreros Unidos,* 92 P.R.R. 57 (1965).

■ 2.—It is argued that this case deals with the enforcement of an arbitration award and that the Labor Relations Board is the body which has exclusive jurisdiction to do it, and as it refused to do so the courts lack jurisdiction to take cognizance of cases like this one. We do not believe that such is the situation. The complaint in this case requests that the workers affected, that is, those who failed to cover the weekly task and whose salaries were only equaled to the federal minimum rate, be paid the amounts resulting from the study of the payrolls and record, on the basis that the increase in wages made in the different agreements be computed on the basis of the federal minimum weekly wage. Thus, it deals with a private suit to compel an employer to comply with the provisions of an award. As we said in *Labor Relations Board* v. *N.Y. & P.R. S.S. Co.*, *supra*, there is nothing in our law to bar this action. *Labor Relations Board* v. *Metropolitan Bus Authority*, 91 P.R.R. 484 (1964); *Asociación de Guardianes* v. *Bull Line*, 78 P.R.R. 680, 684 (1955).

■ 3.—Is it proper that the increase in wages agreed upon in agreements subsequent to the first one, on which the arbitration award in question was based, shall be determined in the manner provided in said award which specifically covers the increase agreed upon in the first agreement? In other words, is said arbitral determination binding as to the form and manner of computing the wage increases agreed upon in the subsequent agreements? We do not believe so. When the second agreement was signed, the manner for computing the 5% increase on wages under the first agreement, according to the arbitration award rendered in the light of the provisions in the first agreement, was to apply that 5% to the federal minimum weekly wage, irrespective of whether the worker earned that minimum on the basis of piecework produced by him during the week. The fact that the employer (1) was not agreeable with the

award, (2) had tried to change it, and (3) had he failed to pay the wages in conformance with the same, does not alter in any manner whatsoever this conclusion, since we have decided that said award was legally rendered and no legal ground has been shown to impeach it. The second agreement provides that a 5% increase is granted on the piece rates effective January 1, 1960, that is, at the expiration of the first agreement. Were those the rates originally prevailing when the first agreement was signed? Or was it the federal weekly-rate plus 5%, as determined by the arbitrator, in cases of workers who failed to produce sufficient piecework in the week so that their pay would amount to, at least, the federal minimum rate? Certainly, the former could not prevail. Nor the latter, since the arbitrator did not determine so. There is no doubt that under the first agreement the rates were those determined by the arbitration award. But is the determination necessarily the starting point to determine the increase granted under the second agreement between the same parties? Or is it that, having failed to arbitrate on the increase under the second agreement, and there being no showing in the record that any dispute in this connection should be submitted to arbitration, the court may determine the form and manner for computing the increase granted in the second agreement? We believe the court can make such determination since the award was not made expressly extensive to the second agreement nor is it binding at law in the interpretation of the latter. Therefore, we conclude that in the light of the clear disposition of the second agreement, the 5% increase in this agreement must be computed on the piece rate prevailing when the first agreement was executed increasing said rate by 5% under the first agreement, that is, the starting point for the second increase is 105% of the piece rate prevailing at the commencement of the first agreement.

As to the agreements subsequent to the second, which were executed between the employer and a separate and distinct union of U.T.M., the situation is still more evident. The manner for computing the increase determined by the award in question is not binding, nor controlling as the starting point to compute the increases granted in these agreements. It should be noted that the third agreement provided that the 5% increase is "in addition to the total of any increases on said base piece rates previously granted, thus bringing the formula on piece prices, as of July 9 1962 to base plus nineteen 19%". This is distinguishable from the increase granted to workers who are paid by the hour, which was 5% over their wage. For the second year of this agreement a 4% increase was agreed upon, so that "This increase will also be in addition to the total of any increases on said base piece rates in effect on the last day of the first year of this contract thus bringing the formula to base plus 23%." It was likewise stipulated in the last agreement, except that the increases were 4 1/2% for the first year and 4% for the second year, thus bringing the formula for computing the 4 1/2% increase to base plus 27 1/2%, and in the second to base plus 31 1/2%. The base piece rate must be understood as the one prevailing when the first agreement was signed. It is thus inferred from the fact that the total percentage of all increases mathematically corresponds to the total of all the increases obtained by the agreements from the piece rate at the time the first agreement was signed. Therefore, in the agreements subsequent to the first one, the pieceworkers are entitled to the base piece rate, plus the percentage thereof stipulated in each agreement, under the stated formulas. In case that in any week the total wages paid to any worker do not amount to the prescribed federal minimum wage, due to his slow production, that is, that during that week that worker did not produce the number of pieces that

according to the piece rate would justify paying him said minimum wage, the employer is bound to add the difference to the weekly pay of that worker, so as to guarantee him a wage at least equal to the prevailing federal minimum.

■ As it does not appear from the record that the agreement covering the period from January 9, 1964, to July 9, 1966, contains an arbitration clause, we conclude that the trial judge erred in determining that the claim for unpaid wages during this agreement must be submitted to arbitration because he affirmed that: "This agreement was bargained while the ruling in *Ceferino Pérez* v. *Water Resources Authority* was in force," since "In this case petitioner himself accepted that according to the agreement his claim must be arbitrated." Such acceptance does not appear from the record.

By virtue thereof, the judgment rendered in this case by the Superior Court, San Juan Part, is modified to order the following:

1.—Judgment is rendered in favor of petitioner and ordering respondents to pay to the pieceworkers who worked during the period comprised between April 27, 1959 and December 31 of said year, the unpaid wages according to the formula which should be paid in conformance with the arbitration award, consisting in not less than the federal weekly wage of 59 cents per hour and $23.60 for 40 working hours per week, plus 5% over said wage or over the highest wage that might result from the application of the wage rate prevailing at the time for piecework produced by the worker as his weekly task.

2.—The wages to be paid to pieceworkers under the agreements subsequent to the first one will be computed under the following formulas, but will never be less than the prevailing federal minimum wage:

(a) Agreement No. 2 for the period from January 1, 1960 to July 9, 1962 at the rate of 105% of the prevailing base piece rate on April 27, 1959 (hereinafter designated as the base rate) plus 5%.

(b) Agreement No. 3 for the period covering from July 9, 1962 to July 9, 1964, the base rate plus 19% during the first year and plus 23% during the second year of said agreement.

(c) Agreement No. 4 for the period covering from July 9, 1964 to July 9, 1966 the base rate plus 27 1/2 % during the first year and plus 31 1/2 % during the second year of said agreement.

3.—Respondents are ordered to pay to said workers as additional compensation (29 L.P.R.A. § 246b) an amount equal to the amount he failed to pay according to this decision.

The case is remanded to the trial court for further proceedings consistent with the terms of this opinion.