SEAFARERS INTERNATIONAL UNION PUERTO RICO DIVISION WELFARE PLAN, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, ÁNGEL M. UMPIERRE, JUDGE, Respondent.

No. C-62–48.  Decided December 18, 1962.

Sarah Torres Peralta, Ginoris Vizcarra, and Federico Rodríguez Pagán for petitioner. Harry B. Llenza for intervener, Valencia Baxt Express, Inc.

Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, pro-tempore, Mr. Justice Santana Becerra, and Mr. Justice Blanco Lugo.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On October 24, 1960 the Seafarers International Union Puerto Rico Division Welfare Plan filed an amended complaint against Valencia Baxt Express, alleging that defendant had to contribute to plaintiff's "welfare plan" the amount of ten cents for every regular hour of work of its employees and that for such reason defendant owed $16,403.65, distributed as follows: February 1960—$2,501.20; March—$2,640.53; April — $3,277.68; May — $2,691.33; June—$2,647.53, and July 1960—$2,645.38. It also alleged that pursuant to the contract of the Welfare Plan "signed" by plaintiff and defendant, the latter was bound to pay attorney's fees in case of default in the payment of its contribution to the Plan and requested judgment for $16,403.65 plus costs and $3,000 as attorney's fees.

In its answer to the amended complaint defendant accepted its obligation to contribute ten cents per regular hour

of work to the Welfare Plan under the collective bargaining agreement signed between the parties, but alleged that in clause No. XVI of said agreement it was provided that the Union agreed not to enter into any agreements with any other company or employer in more favorable terms than those granted to defendant, and that in the event that a more favorable contract is entered into by the Union, the contract shall, at the option of the defendant as employer, be deemed amended, to include the more favorable terms; and if a dispute arises over the terms of this paragraph, the same shall be submitted to the grievance procedure and arbitration. Respecting the foregoing, defendant alleged that plaintiff entered into collective bargaining agreements with various firms to which it referred in more favorable terms by virtue of which the employers were bound to contribute to the Welfare Plan only the amount of six cents during the period from July to December 1959, and seven cents as of January 1, 1960. That pursuant to the collective bargaining agreement it had the right to readjust its contributions to six and seven cents, respectively, and as a consequence of said readjustment it owed plaintiff the amount of $963.85 until July 1960, which amount it deposited in the office of the Clerk of the Court with its answer.

From the Minutes of the pretrial conference the following facts appear: (1) The claim of $2,501.20 for the month of February 1960 was eliminated. (2) It was provided that the controversy was limited to determining whether defendant was bound to contribute ten cents to the Plan or only six cents until December 31, 1959, and seven cents as of January 1. (3) That if it was ten cents, the sum claimed by plaintiff was correct. (4) That if it was seven cents, the amount of $9,689.70 from March to July 1960 would be owed. (5) The parties accepted that they had not submitted the controversy to arbitration. (6) Plaintiff accepted the allegation in the answer to the effect that it had had agreements with other employers in more favorable terms, in the

manner expressed in the aforesaid answer. These Minutes are dated December 5, 1960. The case on the merits was set for March 9, 1961 but the trial was not held.

On December 27, 1961 plaintiff filed a motion requesting leave to file a supplementary complaint. In the aforesaid supplementary complaint it alleged that on August 10, 1961 a new collective bargaining agreement between the parties had taken effect by virtue of an arbitration award which provided that defendant had to pay to the Plan, retroactive to December 1, 1960, sums which amounted to $30,000; that said debt would increase at the rate of $3,000 per month and was due, it being an account stated. It alleged in the alternative that by authority of the previous collective bargaining agreement which expired on November 30, 1960, the Welfare Fund clause continued in effect after the expiration of said agreement and until the new one was bargained on August 10, 1961. That on that account defendant owed the sum of $27,000 from October 22, 1960 until that date. Defendant opposed the supplementary complaint alleging that the court had no jurisdiction because the dispute had to be submitted to arbitration pursuant to the collective bargaining agreement. That plaintiff had resorted to the Labor Relations Board with charges respecting this contribution, which were dismissed, among other reasons, because there were arbitration clauses. It also alleged that the arbitration award of August 10, 1961 on which plaintiff relied in its supplementary complaint, was being challenged as to its validity in another suit in the San Juan Part of the Superior Court itself, for declaratory judgment, No. 61–6533.[1]

On February 28, 1962 the trial court entered an order

---

[1] There is evidence in the record of a decision of the Labor Relations Board dismissing a complaint of the Union for violating a collective bargaining agreement between February and November 30, 1960, because defendant reduced the contributions to the Welfare Fund. The complaint was dismissed because the complainant had not submitted the dispute to the grievance committee created by the collective bargaining agreement.

holding that the "Welfare Fund" had authority to make the claim as an independent entity; and in the light of clauses Nos. II, V, and XVI of the agreement, it ruled that there was a controversy between the parties as to the sum which defendant had to contribute to said Fund, which should be determined by arbitration; that plaintiff's cause of action accrued after an arbitration award was entered, and the jurisdiction of the court could be invoked only to enforce said award. It granted plaintiff ten days to amend the supplementary complaint alleging the existence of the award. If it did not exist, the action did not lie.

On March 19, 1962 plaintiff filed an amended supplementary complaint, reproducing the allegations of the amended complaint of "October 22, 1961." * This time it set forth in addition to the allegations in the original supplementary complaint, that it was a person distinct from the parties of the collective bargaining agreement, for which reason the arbitration clause thereof did not apply to it, and if it did, it was impossible to submit the issue to arbitration under the agreement which expired on November 30, 1960, because there was no arbitration committee since that time; that it was impossible to submit it to arbitration under the agreement of August 10, 1961, because defendant had refused to accept the clauses thereof and had filed proceedings in court contesting it.

On that same date plaintiff moved for reconsideration of the order of February 28, alleging the impossibility of submitting the issue to arbitration as to the agreement which expired on November 30, 1960, because there was no committee whatsoever, and as to that of August 10, 1961 because it was not a party therein and because defendant had refused to comply with said agreement. On March 30, 1962 plaintiff filed a second amended supplementary complaint in the same terms but including in the caption, as plaintiffs, the names of six persons in their capacity as trustees of the

---

* The amended complaint is dated October 24, 1960.

Plan and in representation thereof. The motion for reconsideration was denied on April 26, 1962. We granted certiorari to review said orders. A careful study of the controversy convinces us that the writ of certiorari granted must be quashed.

On June 22, 1959 the Seafarers International Union of North America—Atlantic & Gulf District (Puerto Rico Division), the Union, and the employer, defendant Valencia Baxt Express, signed a collective bargaining agreement effective as of June 1, 1959 to continue in effect until November 30, 1960, provided that 60 days prior to this last date any one of the parties notified its intention to terminate it. In clause No. XI it was agreed that the employer was bound to establish a "Welfare Fund" pursuant to the Labor Management Relations Act. To that effect one trustee was designated by the Union and one trustee by the employer, and a third trustee would be designated by the two aforesaid trustees. Defendant was bound as employer to contribute the sum of ten cents for each regular hour worked by each employee up to a maximum of forty hours of work in any week. Clause No. XVI of said agreement provided that the Union agreed not to enter into any agreement with any other company or employer which employed workers as defined in this agreement on more favorable terms, and that if it entered into such contract, then this agreement at the employer's option, would be deemed amended to include the more favorable terms. Clause No. XVI ends by stating that if a dispute arose over the terms of this clause, it would be submitted to the grievance committee and to arbitration, as provided in the agreement itself. In clause V entitled "Arbitration" it was agreed that all grievances, disputes, controversies, and differences involving the interpretation or application of any provision of the agreement would be decided by arbitration, and a committee was established to that effect and the procedure to be followed was specified, and it was agreed that the arbitration award would be final

and binding on the employer, the Union, *and the employees*, and compliance therewith could be enforced in any court of competent jurisdiction.

If we consider the amended complaint filed on October 24, 1960, prior to the expiration of the aforesaid collective bargaining agreement in which the Welfare Fund requested the defendant to pay the amounts for the months from March to July 1960, also prior to the expiration of said collective bargaining agreement, and if we take into account plaintiff's admission in the pretrial conference to the effect that the Union had made contracts with other companies on more favorable terms, the question at issue being whether defendant should contribute to the Fund at the rate of ten, seven, or six cents per hour of work, there is not the least doubt that the dispute involved was a typical one to be submitted to the arbitration procedure provided by the collective bargaining agreement and the jurisdiction of the superior court could not be invoked at first unless there was an award.

The supplementary complaints, nevertheless, present several additional aspects. Plaintiff claims therein the amount of $30,000 on the grounds that on August 10, 1961, when the previous agreement had already expired, an arbitration award was made which operated as a new agreement, in which it was provided that the defendant was bound to contribute to said Fund the amount of eight and a half cents per hour of work. This award was given retroactive effect to December 1, 1960. However, this provision contained in the award of August 10, 1961, retroactively applied, is not the result of an arbitration procedure to which the parties should have submitted the specific controversy as to the amounts to be contributed to the Fund. From the face of this award of August 10, 1961 it appears that it was issued by virtue of a *submission* in different circumstances, and for other motives, not on the basis of this dispute, nor did the award fixing eight and a half cents attempt to decide the dispute. Besides the fact that at the date the supple-

mentary complaints were filed this award of August 10, 1961 was being challenged as to its validity in the same Part of the Superior Court, on October 25, 1962 this Court, in the case of *Puerto Rico Labor Relations Board in the name and on behalf of the Seafarers International Union, etc.* v. *Valencia Baxt Express*, JRT-62-2, refused to enforce said award judicially for the considerations which it set forth.

Plaintiff alleges in the supplementary complaints, in the alternative, that defendant owed the Fund $27,000 from October 22, 1960, pursuant to the agreement expired on November 30, 1960, on the grounds that the Welfare Fund clause of the previous collective bargaining agreement remained effective even after its expiration and until a new one was negotiated, which was actually done on August 10, 1961. It contends that it was unable to submit to the arbitration procedure as far as this period is concerned, because there was no arbitration committee since November 30, 1960, when the agreement expired, and also because defendant did not accept the award of August 10, 1961.

It is true that the agreement provided in its final clause that during the negotiations of any new collective bargaining agreement defendant, as employer, would maintain the economic conditions therein provided, and the Union would not engage in strike. It may be accepted that among the economic conditions there was the provision which obliged defendant to contribute to the Welfare Fund. In the light of the rational interpretation of the agreement so as to give full effectiveness to and compliance with the will of the parties throughout all its clauses, it is logical to conclude that if its provisions as to the obligation to contribute to this Fund were effective after its expiration and until a new agreement was made, the clause referring to the manner of deciding the dispute respecting said contributions had to be equally effective after the expiration of the agreement. The pertinent clauses—Nos. XI and XVI—are one and indivisible

regarding the will of the parties. We can not therefore agree with plaintiff and petitioner herein, that as of November 30, 1960, it lacked the mechanism of arbitration provided in the agreement.

■ Plaintiff, petitioner herein, also maintains that it could not abide by the mechanism of arbitration inasmuch as the Welfare Fund is a juridical entity distinct and separate from the Union, and as such separate entity it was not a party in the collective bargaining agreement. Again we can not agree with plaintiff. Accepting that the Fund has interest or personality of its own to file a suit claiming its contribution, the same is a creature born of the collective bargaining agreement between the Union and the employer, and does not derive any right or cause of action from any other source other than the agreement itself. If the latter provided that the disputes as to those contributions should be elucidated definitively through arbitration, we must perforce conclude that the Fund, whether or not its separate personality to claim is acknowledged, is equally obliged by that provision of the agreement denying a judicial cause of action before the courts.

■■ We need not invoke extensive juridical gloss to repeat what is already a well-known rule which prevents the courts from entertaining at first instance the merits of a controversy when the parties have agreed to settle it by arbitration. To render valid the contractual will of the parties when not contrary to public order or interest or when the aims and purposes of any other legislative norm of general interest are not defeated—cf. *Wilko* v. *Swan*, 346 U.S. 427, 435, 438—as well as to render valid a well-defined public policy which encourages this simpler, less formal and speedier way of deciding controversies between citizens, made possible by arbitration—specially those arising from collective bargaining agreements in the labor-management relations sphere because of what the collective bargaining agreement is and means to the forces of social pro-

duction— arbitration agreements should be strictly enforced if the *submission* is clear and free from ambiguity as to the will of the parties in that sense. *Cf. Labor Relations Board v. N.Y. & P.R.S.S. Co.*, 69 P.R.R. 730; *Labor Rel'n Board v. Soc. Mario Mercado e Hijos*, 74 P.R.R. 376; *P.R. Labor Rel. Board v. Orange Crush of P. R.*, 80 P.R.R. 281; *P.R. Housing Authority v. Sup'r Ct.; Zequeira, Int.*, 82 P.R.R. 333, and cases cited therein.[2] Federal case law interpretative of labor laws in the national area no longer leaves any doubt as to these norms, recognizing to the federal courts their power to decree *specific performance* of arbitration clauses binding the parties to submit thereto. *Cf. Local 205, United Electrical etc. v. General Electric*, 233 F.2d 85 (C.A. 1), *affirmed* in *General Electric v. Local 205*, 353 U.S. 547; *Textile Workers v. Lincoln Mills*, 353 U.S. 448; and cases revised therein; *Dowd v. Courtney*, 368 U.S. 502; *Teamster Local v. Lucas Flour Co.*, 369 U.S. 95; *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17.

▌ As we noted not long ago in deciding the above-mentioned case of JRT-62-2, we have no statute on labor-management arbitration.[3] Our Act No. 376 of May 8, 1951, which regulates commercial arbitration, expressly provides that it does not apply to arbitration between employers and employees. In deciding problems arising in this area, we have been applying the rules which regulate arbitration in general. Even if only by way of illustration of how conclusive is the public legislative policy to which we have made

---

[2] See the Spanish law on Private Law arbitration of December 22, 1953, which substituted the old provisions on arbitration of the Law of Civil Procedure of 1881—MEDINA AND MARAÑÓN, *Leyes Civiles de España* (1958)— with the convincing expression of the important role which arbitration plays in these times as a convenient social means to settle conflicts and clashing interests without resorting to the coercive power of the courts, appearing in the declaration of policy which precedes the publication of said Act of 1953 in *Enciclopedia Jurídica Española*, Appendix, p. 105 (1953).

[3] Act No. 142 of June 30, 1961 merely covers certain corporate instrumentalities of the government which were originally included in the service exempt which were later comprised within the competitive service.

reference, it is fitting to point out that Act No. 376 provided an entire procedure integrated in the superior court to compel the parties to submit to arbitration and to stay any judicial action or proceeding respecting a question which should be submitted to arbitration, until it gets under way.

The decision of the trial court object of this appeal was correct and, we repeat, the writ of certiorari issued must be vacated.