LOCAL 1511 OF THE AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO v GRAND
LODGE OF FREE AND ACCEPTED MASONS OF THE STATE OF
MICHIGAN

1. LABOR RELATIONS—ARBITRATION—APPEAL AND ERROR.

An arbitrator has a unique position to familiarize himself with
the customs and practices of a particular plant or operation,
and the courts will not disturb a labor arbitration award
merely because they differ with the arbitrator's interpretation
of the collective bargaining agreement where the parties to the
agreement selected an arbitrator to settle a contract-related
dispute by interpreting the various provisions of the agreement;
a trial court did not err by refraining from disturbing an
arbitrator's award and ordering its enforcement where the
arbitrator's award was properly based upon an interpretation
of the collective bargaining agreement and did not stem from
the arbitrator's own personal brand of industrial justice.

2. LABOR RELATIONS—ARBITRATION—COLLECTIVE BARGAINING AGREE-
MENT—GRIEVANCE—ENFORCEMENT.

A circuit court did not err in ordering arbitration of a grievance
where the union charged the employer with violating several
provisions in a collective bargaining agreement and the arbitra-
tion clause of the collective bargaining agreement broadly
provided that it was the intent of the parties that arbitration
shall be used during the life of the agreement to resolve
disputes which arise concerning the express provisions of the
agreement.

3. LABOR RELATIONS—STRIKES—JURISDICTION.

A circuit court did not err by failing to pass upon a claim that a
strike was in violation of the Federal Labor-Management Rela-
tions Act because the National Labor Relations Board is vested
with exclusive jurisdiction in determining whether certain

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations §§ 1330, 1401.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1246–1257.
[3, 4] 48 Am Jur 2d, Labor and Labor Relations §§ 1338, 1339.

activities constitute an unfair labor practice under the act; state jurisdiction on the matter must yield.

4. LABOR RELATIONS—STRIKE—TORTS—JURISDICTION.

State courts have jurisdiction independent of the National Labor Relations Board to award damages for tortious conduct involving violence or threats during a strike.

Appeal from Gratiot, Leo W. Corkin, J. Submitted Division 3 March 7, 1973, at Grand Rapids. (Docket No. 13768.) Decided June 26, 1973. Leave to appeal denied, 390 Mich 792.

Complaint by Local 1511 and Michigan Council 55 of the American Federation of State, County and Municipal Employees, AFL-CIO, against the Grand Lodge of Free and Accepted Masons of the State of Michigan, Masonic Home, to enforce an award of a labor grievance arbitrator. Relief granted. Defendants appeal. Affirmed.

*Zwerdling, Maurer, Diggs & Papp,* for plaintiffs.

*Fortino, Plaxton & Moskal,* and *Griffiths & Griffiths,* and *Clark, Hardy, Lewis & Fine,* for defendant.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,* JJ.

T. M. BURNS, J. This case emanates from a bitter and protracted labor dispute between a union and an employer.

In 1967 the union and the employer entered into a collective bargaining agreement which covered some 200 employees at the Masonic Home in Alma, Michigan. The agreement was set to expire on December 31, 1969. While negotiations on a new contract were in progress at the end of 1969,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the parties agreed to extend the provisions of the 1967 agreement until February 1, 1970. However, a new accord could not be reached and on February 5, 1970, the union called a strike which lasted until the terms of the new contract were settled on December 5, 1970.

In the meantime on February 16, 1970, the union filed an unfair labor practice charge with the National Labor Relations Board (NLRB) alleging that the employer had refused to bargain in good faith as required by § 8(a)(5) of the Labor Management Relations Act (LMRA).[1] Subsequently on March 16, 1970, the union withdrew its charge on the premise that the NLRB would not entertain any action against a nonprofit employer such as the defendant. However in July of 1970, the NLRB reversed a long-standing policy of not considering any matters involving a nonprofit employer and asserted jurisdiction over the case of *Michigan Licensed Practical Nurses v Michigan Masonic Home* (Case No. 7-CA-8034). As a result of this action on the part of the NLRB, the union renewed its charge against the employer. The employer answered by charging the union with conducting an illegal strike in violation of § 8(d) of the LMRA.[2]

After conducting an investigation of the charges and countercharges, the NLRB notified the employer's attorney on November 10, 1970, that the employer had apparently refused to bargain in good faith contrary to § 8(a)(5) of the LMRA. The NLRB suggested an informal, voluntary settlement of the matter. In response to the employer's charge of an illegal strike, the NLRB concluded that although the union violated § 8(b)(3) of the

---

[1] 61 Stat 141; 29 USCA 158(a)(5).

[2] 61 Stat 142–143; 29 USCA 158(d).

LMRA[3] by engaging in a strike without complying with the notice requirements of § 8(d) of the act, a formal complaint would not be issued against the union since pursuant to § 10(b) of the act[4] the charge was not filed within 6 months after the alleged illegal strike began.

On November 16, 1970, the NLRB issued a formal complaint against the employer which found that the employer was engaged in commerce within the meaning of §§ 2(2), 2(6), and 2(7) of the LMRA[5] thus subject to the jurisdiction of the NLRB and charged the employer with a refusal to bargain in good faith in violation of § 8(a)(5) of the LMRA. The NLRB has deferred further action on the complaint pending the outcome of the instant suit.

In addition the union and the employer had filed similar charges and countercharges before the Michigan Employment Relations Commission (MERC). When the NLRB took jurisdiction in the *Michigan Licensed Practical Nurses* case, *supra,* the union withdrew its charge before the MERC. Shortly thereafter the MERC acknowledged the NLRB's jurisdiction and dismissed the employer's countercharge.

Having fully set forth the background of the case, we next turn to the facts which led to the present controversy.

During the strike period (February 5 to December 5, 1970) some of the striking employees returned to work. In order to fill vacancies occasioned by those employees who did not return to work, the employer hired nonunion employees. As jobs became available after the strike ended, the

---

[3] 61 Stat 141; 29 USCA 158(b)(3).

[4] 61 Stat 146–147; 29 USCA 160(b).

[5] 61 Stat 137–138; 29 USCA 152(2), 152(6), 152(7).

employer did not rehire the union members who had struck, but rather continued to employ nonunion personnel. On December 9, 1970, as a consequence of the employer's action, the union filed grievances on behalf of 82 union employees who had struck and had not been rehired. The union demanded *inter alia* that the grievants be returned to work. The grievances were based upon the new collective bargaining agreement which had been made retroactive to January 1, 1970.

The grievances proceeded to arbitration. In a written decision dated July 13, 1971, the arbitrator ruled that although under the terms of the new collective bargaining contract the grievants were not entitled to return to work and displace newly hired or lesser seniority employees who were working at the conclusion of the strike, the employer had violated the collective bargaining agreement by hiring new employees to fill job openings occurring in the poststrike period without offering such jobs to qualified grievants. The arbitrator ordered the employer to "make whole those grievants who have been injured by such violations".

Prompted by the arbitrator's decision, the employer sent a form letter to all 82 grievants on July 17, 1971. The letter contained a list of several irregular part-time and summer job openings.[6] The

---

[6] The job openings listed in the letter were as follows:

| | | |
|---|---|---|
| Janitor | 14 hrs per week | |
| Janitor | 16 " " " | |
| Kitchen Helper | 19 " " " | |
| Kitchen Helper | 18 " " " | |
| Kitchen Helper | 15 " " " | |
| Dishwasher | 24 " " " | |
| Laundry Helper | 16 " " " | |
| Orderly | 16 " " " | |
| Hall maid | 22 " " " | |
| Hall maid | 20 " " " | |
| Nurse's aide (10) | 16 " " " | |

employer requested that any of the grievants who were qualified for any of these positions should respond by July 26, 1971, and to report for work as soon as possible but in no event later than July 27, 1971. Of the 82 grievants, 80 sent the employer a timely form letter indicating that they were qualified for each and every position. The grievants asked that they be considered for these jobs and requested the employer to inform them of the exact position for which they were being rehired, the hours per day, the days of the week, and the date they should report to work.

The employer answered via a form letter which terminated the grievants' employment. The letter read:

"A specific job was offered you on July 17, 1971. If you had been interested in being recalled from lay-off status you would have returned to work within the ten days as requested pursuant to Article XV of the collective bargaining agreement.

"You have not properly responded to the recall notice by reporting to work and you are, therefore, removed from the seniority rolls * * * ."

The union filed a new grievance contending that it had learned that some 37 new nonseniority employees had been hired since the strike ended, the employer's job offers were "shams" and calculated to undermine the position of the union as the bargaining agent for the employees. In short the union alleged that the employer was in violation of the arbitration award and the collective bargaining agreement.

The employer countered by asserting that the new grievance was not subject to arbitration and that in any event the first arbitration had decided the questions and the union's only recourse would

be to seek enforcement of the first arbitration award in circuit court.

The union took the employer's advice and on September 14, 1971, instituted a suit in Gratiot County Circuit Court to enforce the arbitration award. The court ordered the employer to show cause at a hearing to be held on November 18, 1971, why an injunction should not issue restraining it from refusing to comply with the arbitration award. In answer the employer asserted that it had complied with the arbitrator's ruling and as affirmative defenses raised the claims that the strike had been illegal in light of § 8(d) of the Federal Labor Management Relation Act and that the strikers had performed acts of violence and had destroyed property for which the plaintiff sought $500,000 in damages.

On October 27, 1971, at the request of the employer, the circuit court issued an *ex parte* injunction prohibiting the union from proceeding with arbitration of the second grievance.

The show cause hearing was held as scheduled on November 18, 1971. After considering the arguments of both sides, the circuit court dissolved the *ex parte* injunction thus in effect ordered the parties to proceed with arbitration of the second grievance. The court also ordered enforcement of the first arbitration award. Later, the employer asserted that the circuit court's order was ambiguous. Accordingly, the circuit court clarified the order. The employer appealed. Pending the outcome of the appeal, we restrained the union from proceeding with the second arbitration.

First the employer argues that the circuit court erred in ordering enforcement of the first arbitration award. We disagree.

Where, as here, the parties to a collective bar-

gaining agreement select an arbitrator to settle a contract-related dispute by interpreting the various provisions of the collective bargaining agreement, the courts, in view of the arbitrator's unique position to familiarize himself with the customs and practices of a particular plant or operation, will not disturb the subsequent arbitration award merely because the court differs with the arbitrator's interpretation of the collective bargaining agreement. It is only when the record discloses that the arbitrator's award was not based upon an interpretation of the collective bargaining agreement but rather stemmed from the arbitrator's own personal brand of industrial justice that courts will refuse to enforce the arbitration award. *United Steelworkers of America v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).

A review of the arbitrator's opinion in the case at bar reveals that the arbitrator examined the 82 grievants' claims in light of the appropriate portions of the collective bargaining agreement. As previously recounted the arbitrator determined that under the terms of the agreement although the grievants were not entitled to displace employees hired during the strike, they were entitled to offers of job openings as they occurred during the poststrike period. The arbitrator found that since the employer had not made such job offers, it was in violation of the agreement and required to make the grievants whole. We find no evidence in the opinion that the arbitrator's decision was based on anything other than the provisions of the contract.

We hold, therefore, that since the arbitrator's award was properly based upon an interpretation of the collective bargaining agreement and did not

stem from the arbitrator's own personal brand of industrial justice, the circuit court did not err by refraining from disturbing the award and ordering its enforcement.

Next it is the position of the employer that the circuit court erred in ordering arbitration of the union's second grievance. The employer contends that the union through the second grievance seeks to relitigate the same matters arbitrated in the first grievance. Again, we must disagree.

Since the NLRB has found the employer subject to the provisions of the LMRA, the union's suit to compel the second arbitration arises under § 301 of the LMRA[7] which has been construed to embrace suits seeking to compel arbitration. See *Textile Workers Union of America v Lincoln Mills of Alabama,* 353 US 448; 77 S Ct 912; 1 L Ed 2d 972 (1957). Both the state and federal courts have jurisdiction over claims arising under § 301. *Charles Dowd Box Co, Inc v Courtney,* 368 US 502; 82 S Ct 519; 7 L Ed 2d 483 (1962). Therefore, the question which confronted the circuit court was whether the employer agreed in the collective bargaining agreement to arbitrate those issues raised by the union in its second grievance. Any doubts are to be resolved in favor of arbitration. *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).

Here the arbitration clause contained in the collective bargaining agreement is very broad in its scope. For example, the arbitration clause reads in pertinent part:

"[I]t is the intent of the parties that arbitration shall be used during the life of this agreement to resolve

---

[7] 61 Stat 156–157; 29 USCA 185.

disputes which arise concerning the express provisions of this agreement * * * ."

In the second grievance the union charged the employer with violating several enumerated provisions in the collective bargaining agreement. Therefore, in view of the broad scope of the arbitration clause and inasmuch as the union cited alleged violations of specific provisions of the collective bargaining agreement, it is our opinion that the trial court did not err in ordering arbitration of the second grievance.

The employer's argument that the second grievance filed by the union was an attempt to rearbitrate the same matters arbitrated in the first grievance requires only a brief comment. We noted earlier that the second grievance had references to a host of part-time and summer job offers allegedly devised to weaken the bargaining strength of the union and evade the arbitrator's first award and to the employer's right to terminate the grievants. It is patent these matters were not determined in the first arbitration since they arose subsequent to that arbitration.

Finally, the employer asserts that the circuit court erred by implicitly refusing to assert jurisdiction over its claim that the union's strike was in violation of § 8(d) of the LMRA and, therefore, illegal.

The NLRB is vested with exclusive jurisdiction in determining whether under § 8, *supra,* certain activities constituted an unfair labor practice. Thus, state jurisdiction on the matter must yield. *San Diego Building Trades Council v Garmon,* 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959). We conclude, therefore, that the circuit court did not err by failing to pass upon the legality of the strike.

It should be noted in closing that in its counter-charge the employer sought to recover $500,000 for damages allegedly caused by the union members' acts of violence and the like during the strike. State courts have jurisdiction independent of the NLRB to award damages for allegedly tortious conduct involving violence or threats during a strike. *United Construction Workers v Laburnum Construction Corp,* 347 US 656; 74 S Ct 833; 98 L Ed 1025 (1954). However, the employer has not pressed its claim on appeal nor did the circuit court rule in this aspect of the employer's charges.

Accordingly, for all of the reasons delineated above, the order of the circuit court compelling the employer to comply with the first arbitration award and requiring the employer to proceed with an arbitration of subsequent grievances is affirmed without prejudice to the employer's right to institute a suit for the damages allegedly caused by the union's use of violence during the strike.

All concurred.