No. 13767

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

AUDIT SERVICES, INC., a Montana
Corporation,

                Plaintiff and Appellant,

     -vs-

BRASEL & SIMS CONSTRUCTION COMPANY,

             Defendant and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
           Honorable Joel G. Roth, District Judge presiding.

Counsel of Record:

    For Appellant:

        Cure and Borer, Great Falls, Montana
        Maxon R. Davis argued, Great Falls, Montana

    For Respondent:

        Smith, Emmons, Baillie and Walsh, Great Falls,
          Montana
        Robert J. Emmons argued, Great Falls, Montana
        Vidakovich, Pappas and Hooper, Lander, Wyoming

---

                 Submitted: December 6, 1977

                     Decided: JAN

Filed: JAN

*Thomas J. Kearney*
                   Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

Audit Services, Inc., appeals from the order for summary judgment and final judgment entered in favor of Brasel & Sims Construction Company by the District Court, Cascade County.

Audit Services, Inc., (Audit Services) is a nonprofit Montana corporation created to assist various union trust funds in the collection of employer fringe benefit contributions. These trust funds were created pursuant to the Labor Management Relations Act, 29 U.S.C. §186(c)(5) and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. Audit Services is suing in its capacity as assignee of eight Montana employee benefit trust funds. These trust funds provide health and welfare, pension, apprenticeship and vacation benefits to Montana laborers, operating engineers and teamsters. The trusts are funded by employer contributions based on hours worked by union and nonunion employees within the particular crafts. Employer contribution rates for each of the trust funds are determined by collective bargaining agreements negotiated between the unions and individual employers or between the unions and associations of employers.

Brasel & Sims Construction Company (Brasel & Sims) is a Wyoming construction firm. During the period May 1972 through August 1974, Brasel & Sims was performing under a road construction contract with the state of Montana, on a project located in southeastern Montana, on the Northern Cheyenne Indian Reservation. At the time Brasel & Sims commenced doing business in Montana it ratified the existing collective bargaining agreements with the Montana Laborers, Operating Engineers, and Teamster

Unions, negotiated in 1971 and effective from May 1, 1971 through April 30, 1974.

On May 8, 1972, Brasel & Sims executed an instrument assigning its bargaining rights to the Montana Contractors' Association for the purpose of negotiating and executing future collective bargaining labor agreements with the Montana Laborers, Operating Engineers, and Teamsters Unions. The instrument of assignment specifically provided:

> " * * * This authority * * * shall continue from year to year unless notice of cancellation of this authority is given to the Montana Contractors' Association at least sixty (60) days prior to the expiration dates of each of the existing aforesaid labor agreements. Cancellation of this authority shall not relieve any contractor of the legal responsibilities it may have accrued by virtue of the execution of any labor agreements on its behalf by this Association. Contractor further understands that it can be released from the multi-employer bargaining unit of which it constitutes a part, and thereafter negotiate and execute individual labor agreements only with the consent of the labor unions involved."

The present controversy arose when Audit Services filed a complaint in the District Court, Cascade County, on April 11, 1974, alleging Brasel & Sims had failed to pay employer contributions due under certain collective bargaining agreements. Brasel & Sims filed an answer denying liability. Plaintiff filed an amended complaint on September 26, 1974, incorporating those claims previously asserted, and prayed for judgment and an award of trust fund contributions in the sum of $14,175.64 plus interest; liquidated damages in the sum of $580.78 plus interest; interest in the sum of $18.25; audit fees in the sum of $799.12 plus interest; reasonable attorney fees in the sum of $4,000; and costs of suit. Brasel & Sims filed an answer to

the amended complaint renewing its denial of liability. The
parties commenced discovery and pretrial briefs were filed.

On November 10, 1976, Brasel & Sims filed a motion for
summary judgment. A stipulation of facts for defendant's motion
for summary judgment was executed by the parties. On December
30, 1976, the District Court issued an order for summary
judgment and final judgment, granting defendant's motion for
summary judgment and dismissing plaintiff's complaint with
prejudice. On January 7, 1977, Audit Services filed a motion
to alter judgment on the grounds: (1) The District Court's
order granting defendant's motion for summary judgment was based
on an affidavit which was never filed with the District Court;
(2) newly discovered evidence; and, (3) insufficiency of the
evidence. A different judge assumed jurisdiction of the matter
for the purpose of hearing and ruling on Audit Services' motion
to alter judgment. On January 24, 1977, the court issued its
order granting Audit Services' motion to alter judgment--

> " * * * to the extent that the reference in the order
> granting summary judgment referring to the affidavit
> * * * is stricken on the grounds that at the time the
> order was made granting summary judgment, that the
> affidavit was not on file at that time."

Except for the exclusion of the unfiled affidavit, which the
court concluded was not the basis for granting the summary
judgment, Audit Services' motion to alter the judgment was
denied.

The principal issue on appeal is whether the District
Court erred when it granted Brasel & Sims' motion for summary
judgment. Rule 56(c), M.R.Civ.P., provides:

> "(c) * * * The judgment sought shall be rendered
> forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together

- 4 -

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *."

For an extensive discussion of the principles of summary judgment under Rule 56(c), M.R.Civ.P., see Harland v. Anderson, (1976), 169 Mont. 447, 548 P.2d 613.

Audit Services challenges the District Court's order granting Brasel & Sims' motion for summary judgment and final judgment on these grounds: (1) That genuine issues of fact remain to be determined; (2) that matters accepted as undisputed fact remain merely allegations of the defendant; (3) that no basis has been put forth why the complaint should have been dismissed in its entirety; and (4) that the District Court misconstrued the law.

Brasel & Sims, on the other hand, contends summary judgment was properly granted in its favor, since there were no genuine issues of material fact and it was entitled to a judgment as a matter of law. Brasel & Sims argues: (1) Its notices to the unions effectively communicated Brasel & Sims' intent to withdraw from collective bargaining; (2) at the time Brasel & Sims gave notice of its intent to withdraw "unusual circumstances" existed which permitted unilateral withdrawal; and (3) the unions consented to Brasel & Sims' unilateral withdrawal.

All parties agree federal labor law is controlling since a dispute involving a collective bargaining agreement falls within the purview of Section 301 of the Taft-Hartley Act, 29 U.S.C. §185. While the Taft-Hartley Act provides for concurrent jurisdiction in state courts, in Dowd Box Co. v. Courtney, (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L ed 2d 483, the United States Supreme Court held that state courts must apply federal law in the exercise of that jurisdiction. Teamsters Union v. Lucas Flour Co., (1962), 369

U.S. 95, 82 S.Ct. 571, 7 L ed 2d 593. See Lowe v. O'Conner, (1973), 163 Mont. 100, 515 P.2d 677.

At the outset, we hold the District Court's order granting summary judgment and final judgment must be vacated as to those contributions sought for the period November 1, 1972 through April 30, 1974, involving approximately 409 1/2 working hours. During this period of time, Brasel & Sims was bound by the 1971-1974 collective bargaining agreement, effective from May 1, 1971 through April 30, 1974. Before this Court, in its written briefs and oral argument, counsel for Brasel & Sims admitted liability for these contributions.

The remainder of the monetary relief sought by Audit Services is for contributions involving approximately 15,010 working hours performed after April 30, 1974, when the 1974-1977 collective bargaining agreement was in effect. Sixty days prior to the expiration of the 1971-1974 collective bargaining agreement the unions gave timely notice of their intent to renegotiate the 1971-1974 agreement. Good faith bargaining between the unions and the Montana Contractors' Association commenced, but no new agreements were reached by May 1, 1974. At that time members of the operating engineers set up a picket line and picketed Brasel & Sims' work site. The laborers and teamsters refused to cross the picket line, leaving Brasel & Sims with only nonunion employees.

On May 3, 1974 and May 6, 1974 Brasel & Sims dispatched notices of termination to the Montana Operating Engineers, Laborers, and Teamster Unions. Although each of the memorandums is drafted in a different form, they individually reiterate the phrase "As of this date we are terminating our agreement with * * *"

the respective unions. Two of the notices contain the phrase "Therefore, since the present contract expired on May 1, 1974, we are exercising our right to terminate at this time." The third notice contains the phrase "We, therefore are terminating our agreement as of this time." Neither a written notice similar to the type Brasel & Sims dispatched to the unions nor any oral communication evidencing an intent to withdraw from collective bargaining was given to the Montana Contractors' Association.

Meanwhile, the Montana Contractors' Association and the unions continued negotiations. New collective bargaining agreements were negotiated by the various unions and the Montana Contractors' Association on June 11, 1974. In its final executed form, the 1974-1977 collective bargaining agreement related back to May 1, 1974, the termination date of the 1971-1974 collective bargaining agreement. In the meantime, Brasel & Sims had hired nonunion employees to complete its road construction project. It is the employer contributions for the period May 1, 1974 through completion of Brasel & Sims' road construction project which Audit Services seeks, involving approximately 15,010 hours.

The United States Court of Appeals, in N.L.R.B. v. Beck Engraving Co., Inc.(3rd Cir. 1975), 522 F.2d 475, summarized federal law controlling an employer's attempted withdrawal from a multi-employer bargaining unit, as announced in Retail Associates, Inc., (1958), 120 NLRB No. 66, pp. 388-400:

> "'Trimmed to its essentials, the Retail Associates rule may be briefly stated: prior to negotiations, either the union or an employer in a multi-employer bargaining unit may unilaterally (i.e., without the consent of the other party) withdraw if adequate written notice is given which evidences an unambiguous intent to withdraw; during negotiations, withdrawal is permissible upon mutual consent or may occur unilaterally in

the event of unusual circumstances. The Courts of Appeals of several circuits have adopted and approved this formula.'" 522 F.2d 481.

Brasel & Sims contends its withdrawal from Montana Contractors' Association during collective bargaining negotiations was effective under the "unusual circumstances" test discussed in N.L.R.B. v. Beck Engraving Co., Inc., supra. However, such a conclusion must be premised on a finding that Brasel & Sims sufficiently communicated to the unions and to the multi-employer bargaining unit an intent to withdraw. Otherwise, an employer might choose to remain silent until new bargaining agreements are negotiated, evaluate the economic benefit or detriment associated with declaring withdrawal, and then contend unusual circumstances as a basis for releasing the employer from contributions based upon man hours worked after termination of the prior collective bargaining agreement.

In the present fact situation, we fail to find Brasel & Sims communicated to either the unions or to the Montana Contractors' Association an unambiguous or unequivocal notice of intent to withdraw from the multi-employer bargaining unit. See N.L.R.B. v. Hi-Way Billboards, Inc., (5th Cir. 1973), 473 F.2d 649; N.L.R.B. v. John J. Corbett Press, Inc, (2nd Cir. 1968), 401 F.2d 673,675. The notices dispatched by Brasel and Sims were only sent to the unions, not to Montana Contractors' Association. Further, the notices only evidenced an intent to terminate agreements with the unions, i.e. the 1971-1974 collective bargaining agreements which expired on May 1, 1974. In no specific terms do the notices dispatched by Brasel & Sims communicate an intent to withdraw from the multi-employer bargaining unit. Nor is the unions' failure to respond to or protest

- 8 -

such notices equivalent to acquiescence or consent to a purported withdrawal from the multi-employer bargaining unit. Such a finding of insufficient notice of withdrawal defeats Brasel & Sims' argument avoiding liability for employer contributions under the 1974-1977 collective bargaining agreements. The District Court erred when it granted judgment for Brasel & Sims as a matter of law.

The order of the District Court granting Brasel & Sims' motion for summary judgment and final judgment is reversed and the cause remanded to the District Court for further proceedings consistent with this Opinion.

_____
Justice

We Concur:

_____
Acting Chief Justice

_____

_____
Justices