CHARLES DOWD BOX CO., INC., *v.*
COURTNEY ET AL.

No. 33.   Argued November 7, 1961.—Decided February 19, 1962.

*George H. Mason* argued the cause and filed briefs for petitioner.

*David E. Feller* argued the cause for respondents. With him on the briefs was *Elliot Bredhoff.*

*John W. Reynolds,* Attorney General of Wisconsin, and *Beatrice Lampert,* Assistant Attorney General, filed a brief for the Wisconsin Employment Relations Board, as *amicus curiae,* urging affirmance.

MR. JUSTICE STEWART delivered the opinion of the Court.

Section 301 (a) of the Labor Management Relations Act of 1947 provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in contro-

versy or without regard to the citizenship of the parties." [1]

The sole question presented by this case is whether this federal statute operates to divest a state court of jurisdiction over a suit for violation of a contract between an employer and a labor organization.

The petitioner is an employer engaged in an industry affecting commerce as defined in the Labor Management Relations Act of 1947. The United Steelworkers of America, an international union, was the collective bargaining representative of the petitioner's production and maintenance employees, organized in Local 5158. A few

---

[1] The remaining provisions of § 301 are as follows:

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 29 U. S. C. § 185, 61 Stat. 156–157.

weeks before the expiration of a collective bargaining agreement in 1957, negotiations were initiated between representatives of the union and of the petitioner with respect to proposals which the union had submitted for a new agreement. After a number of negotiating sessions, a "Stipulation" was signed by representatives of each party, continuing in effect many provisions of the old agreement, but providing for wage increases and making other changes with respect to holidays and vacations. The terms of the "Stipulation" were later embodied in a draft of a proposed new agreement. The petitioner originally announced to its employees that it would put into effect the wage changes and other provisions covered by the "Stipulation" and draft agreement, but a few weeks later notified its employees of its intention to terminate these changes and return "to the rates in effect as of May 18, 1957." It was the petitioner's position that its bargaining representatives had acted without authority in negotiating the new agreement, and that the union had been so advised before any contract had actually been concluded.

The present action was then brought in the Superior Court of Massachusetts for Worcester County by the respondents, local union officers and a staff representative of the International Union. The complaint alleged that the plaintiffs "fairly and adequately represent the interests of the entire membership" of the union and Local 5158, and asked for a judgment declaring that there existed a valid and binding collective bargaining agreement, for an order enjoining the company from terminating or violating it, and for an accounting and damages. Responding to the complaint, the petitioner interposed several defenses, among them the contention that, by reason of § 301 (a) of the Labor Management Relations Act, the state court had no jurisdiction over the controversy.

The trial court rejected this attack upon its jurisdiction, determined on the merits that the collective bargaining agreement was "valid and binding on the parties thereto," and entered a money judgment in conformity with the wage provisions of the agreement.

The Supreme Judicial Court of Massachusetts affirmed, expressly ruling that § 301 (a) has not made the federal courts the exclusive arbiters of suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. As Chief Justice Wilkins put it, "We do not accept the contention that State courts are without jurisdiction. The statute does not so declare. The conferring of jurisdiction in actions at law upon the appropriate District Courts of the United States is not, in and of itself, a deprivation of an existing jurisdiction both at law and in equity in State courts. The case principally relied upon by the defendant, *Textile Wkrs. Union of America* v. *Lincoln Mills,* 353 U. S. 448, does not so state. In the absence of a clear holding by the Supreme Court of the United States that Federal jurisdiction has been made exclusive, we shall not make what would be tantamount to an abdication of the hitherto undoubted jurisdiction of our own courts." [2] Certiorari was granted to consider

---

[2] 341 Mass. 337, 338–339, 169 N. E. 2d 885, 887. As pointed out by the Massachusetts court, its view is in accord with other state court decisions. *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal. 2d 45, 57–60, 315 P. 2d 322, 328–330; *Connecticut Co.* v. *Division 425, Street & Electric Railway Employees,* 147 Conn. 608, 164 A. 2d 413; *Harbison-Walker Refractories Co.* v. *Local 702, United Brick & Clay Workers,* 339 S. W. 2d 933 (Ky. Ct. App.); *Miller* v. *Kansas City Power & Light Co.,* 332 S. W. 2d 18 (Mo. App.); *Anchor Motor Freight N. Y. Corp.* v. *Local 445, Teamsters Union,* 5 App. Div. 2d 869, 171 N. Y. S. 2d 511; *Steinberg* v. *Mendel Rosenzweig Fine Furs,* 9 Misc. 2d 611, 167 N. Y. S. 2d 685; *General Electric Co.* v. *United Automobile Workers,* 93 Ohio App. 139, 153–156, 108 N. E. 2d

the important question of federal law thus presented. 365 U. S. 809. We agree with the Supreme Judicial Court of Massachusetts that the courts of that Commonwealth had jurisdiction in this case, and we accordingly affirm the judgment before us.

It has not been argued, nor could it be, that § 301 (a) speaks in terms of exclusivity of federal court jurisdiction over controversies within the statute's purview. On its face § 301 (a) simply gives the federal district courts jurisdiction over suits for violation of certain specified types of contracts. The statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described "may" be brought in the federal district courts, not that they must be.

The petitioner points out, however, that this Court held in *Textile Workers Union* v. *Lincoln Mills*, 353 U. S. 448, that § 301 (a) is more than jurisdictional—that it authorizes federal courts to fashion, from the policy of our national labor laws, a body of federal law for the enforcement of agreements within its ambit. The Court recognized in that case that "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy," but

211, 220–222; *Local Lodge No. 774, Int'l Assn. of Machinists* v. *Cessna Aircraft Co.*, 186 Kan. 569, 352 P. 2d 420; *Local 8, Longshoremen's Union* v. *Harvey Aluminum*, 226 Ore. 94, 359 P. 2d 112; *Springer* v. *Powder Power Tool Corp.*, 220 Ore. 102, 348 P. 2d 1112; *Philadelphia Marine Trade Assn.* v. *Local 1291, Longshoremen's Assn.*, 382 Pa. 326, 115 A. 2d 733; *Lucas Flour Co.* v. *Local 174, Teamsters Union,* 57 Wash. 2d 95, 356 P. 2d 1; *Clark* v. *Hein-Werner Corp.*, 8 Wis. 2d 264, 99 N. W. 2d 132, 100 N. W. 2d 317. But at least two federal courts have expressed the view that their jurisdiction under § 301 (a) might be exclusive. *Association of Westinghouse Employees* v. *Westinghouse Elec. Corp.*, 210 F. 2d 623, 629–630, note 16, aff'd 348 U. S. 437; *International Plainfield Motor Co.* v. *Local 343, United Automobile Workers*, 123 F. Supp. 683, 692 (D. N. J.).

emphasized that "[a]ny state law applied . . . will be absorbed as federal law . . . ." 353 U. S., at 457.

It is argued that the rationale of *Lincoln Mills* would be frustrated if state courts were allowed to exercise concurrent jurisdiction over suits within the purview of § 301 (a). The task of formulating federal common law in this area of labor management relations must be entrusted exclusively to the federal courts, it is said, because participation by the state courts would lead to a disharmony incompatible with the *Lincoln Mills* concept of an all-embracing body of federal law. Only the federal judiciary, the argument goes, possesses both the familiarity with federal labor legislation and the monolithic judicial system necessary for the proper achievement of the creative task envisioned by *Lincoln Mills*. An analogy is drawn to our decisions which have recognized the necessity of withdrawing from the state courts jurisdiction over controversies arguably subject to the jurisdiction of the National Labor Relations Board.[3]

Whatever the merits of this argument as a matter of policy, we find nothing to indicate that Congress adopted such a policy in enacting § 301. The legislative history of the enactment nowhere suggests that, contrary to the clear import of the statutory language, Congress intended in enacting § 301 (a) to deprive a party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal.

We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the

---

[3] See, *e. g., San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236.

rule.[4]   This Court's approach to the question of whether Congress has ousted state courts of jurisdiction was enunciated by Mr. Justice Bradley in *Claflin* v. *Houseman*, 93 U. S. 130, and has remained unmodified through the years. "The general question, whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises . . . [and] the result of these discussions has, in our judgment, been . . . to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case." 93 U. S., at 136. See *Robb* v. *Connolly*, 111 U. S. 624; *Second Employers' Liability Cases*, 223 U. S. 1, 56–59; *St. Louis, B. & M. R. Co.* v. *Taylor*, 266 U. S. 200; *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239, 245; *Brown* v. *Gerdes*, 321 U. S. 178, 188 (concurring opinion).[5]   To hold that § 301 (a) operates to deprive the state courts of a substantial segment of their established jurisdiction over contract actions would thus be to disregard this consistent history of hospitable acceptance of concurrent jurisdiction.

Such a construction of § 301 (a) would also disregard the particularized history behind the enactment of that provision of the federal labor law.   The legislative history makes clear that the basic purpose of § 301 (a) was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organiza-

---

[4] Indeed, Congress has so arranged the limited jurisdiction of federal courts that some federal laws can be enforced only in the state courts.   See, *e. g.*, 28 U. S. C. § 1331, conferring jurisdiction upon federal courts of civil actions arising under the Constitution, laws, or treaties of the United States only if the matter in controversy exceeds the sum or value of $10,000.

[5] See also *Houston* v. *Moore*, 5 Wheat. 1, 25–27, and see generally The Federalist No. 82 (Hamilton).

tions. Moreover, there is explicit evidence that Congress expressly intended not to encroach upon the existing jurisdiction of the state courts.

The Labor Management Relations Act of 1947 represented a far-reaching and many-faceted legislative effort to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process. It was recognized from the outset that such an effort would be purposeless unless both parties to a collective bargaining agreement could have reasonable assurance that the contract they had negotiated would be honored. Section 301 (a) reflects congressional recognition of the vital importance of assuring the enforceability of such agreements.

The direct antecedent of § 301 was § 10 of the Case bill, H. R. 4908, 79th Cong., 2d Sess., which was passed by both Houses of the Congress, but vetoed by the President in 1946. In conferring upon the federal district courts jurisdiction over suits upon contracts made by labor organizations, that section of the Case bill contained provisions substantially the same for present purposes as the provisions of § 301 at issue in this case.[6]

---

[6] "SEC. 10. (a) Suits for violation of a contract concluded as the result of collective bargaining between an employer and a labor organization if such contract affects commerce as defined in this Act may be brought in any district court of the United States having jurisdiction of the parties.

"(b) Any labor organization whose activities affect commerce as defined in this Act shall be bound by the acts of its duly authorized agents acting within the scope of their authority from the said labor organization and may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States: *Provided,* That any money judgment against such labor organization shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of this section district courts shall be deemed to have jurisdiction of a labor organization (1) in the district

510

In considering these provisions of the proposed legislation in 1946, Congress manifested its complete awareness of both the existence and the limitations of state court remedies for violation of collective agreements. A principal motive behind the creation of federal jurisdiction in this field was the belief that the courts of many States could provide only imperfect relief because of rules of local law which made suits against labor organizations difficult or impossible, by reason of their status as unincorporated associations. The discussion between the supporters and opponents of this provision of the Case bill centered primarily on the nature and availability of existing state remedies. As a result, both factions collected and presented comprehensive data respecting the laws of the various States as to the status of labor organizations as legal entities. See, *e. g.*, S. Rep. No. 1177, 79th Cong., 2d Sess., Minority Report, pp. 10–14; 92 Cong. Rec. 5412–5415.

The bill which the Senate originally passed the following year contained a provision making a breach of a collective bargaining agreement an unfair labor practice subject to the jurisdiction of the National Labor Relations Board, S. 1126, 80th Cong., 1st Sess., §§ 8 (a)(6),

in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of summons, subpena, or other legal process upon such officer or agent shall constitute service upon the labor organization.

"(d) Any employee who participates in a strike or other interference with the performance of an existing collective bargaining agreement, in violation of such agreement, if such strike or interference is not ratified or approved by the labor organization party to such agreement and having exclusive bargaining rights for such employee, shall lose his status as an employee of the employer party to such agreement for the purposes of sections 8, 9, and 10 of the National Labor Relations Act: *Provided,* That such loss of status for such employee shall cease if and when he is reemployed by such employer."

8 (b)(5), as well as a provision conferring jurisdiction upon the federal courts over suits for violation of collective agreements. In conference, however, it was decided to make collective bargaining agreements enforceable only in the courts. "Once parties have made a collective bargaining contract," the conference report stated, "the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board." H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess., p. 42.

The report which accompanied the bill passed by the House of Representatives in 1947 explicitly acknowledged that the proposed § 301 was a slightly recast version of § 10 of the Case bill. H. R. Rep. No. 245, 80th Cong., 1st Sess., p. 45. The record of the congressional debates on § 301 of the 1947 Act reflects the same concern with the adequacy of the laws of the various States as had been expressed the previous year in the discussion of § 10 of the Case bill. The Minority Report in the House in 1947 again discussed the availability of relief, the alternative means of recovery, and the scope of remedy in suits against labor organizations under the laws of the various States. H. R. Rep. No. 245, 80th Cong., 1st Sess., pp. 108–109. The Senate Report reproduced verbatim the detailed analysis of state procedural law which had been contained in the Senate Minority Report on the 1946 legislation. S. Rep. No. 105, 80th Cong., 1st Sess., pp. 15–18.

The clear implication of the entire record of the congressional debates in both 1946 and 1947 is that the purpose of conferring jurisdiction upon the federal district courts was not to displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over contracts made by labor organizations. There seems to have been explicit mention of the question only once—in the Senate debate over § 10 of the

1946 bill. A spokesman for the bill, Senator Ferguson, stated unequivocally that state court jurisdiction would not be ousted by enactment of the federal law:

"Mr. FERGUSON. Mr. President, there is nothing whatever in the now-being-considered amendment which takes away from the State courts all the present rights of the State courts to adjudicate the rights between parties in relation to labor agreements. The amendment merely says that the Federal courts shall have jurisdiction. It does not attempt to take away the jurisdiction of the State courts, and the mere fact that the Senator and I disagree does not change the effect of the amendment.

"Mr. MURRAY. But it authorizes the employers to bring suit in the Federal courts, if they so desire.

"Mr. FERGUSON. That is correct. That is all it does. It takes away no jurisdiction of the State courts." 92 Cong. Rec. 5708.

Although the record of the 1947 debates contains no explicit statement of such precise relevance as Senator Ferguson's remarks in 1946, the entire tenor of the 1947 legislative history confirms that the purpose of § 301, like its counterpart in the Case bill, was to fill the gaps in the jurisdictional law of some of the States, not to abolish existing state court jurisdiction. For example, Senator Ball, one of the Floor Leaders for the bill, stated:

"[W]e give to employers the right to sue a union in interstate commerce, in a Federal court, for violation of contract. It does not go beyond that. As a matter of law, I think they have that right, now, but because unions are voluntary associations, the common law in a great many States requires service on every member of the union, which is very difficult; . . ." 93 Cong. Rec. 5014.[7]

---

[7] See also the remarks of Senator Smith, 93 Cong. Rec. 4281.

This basic purpose of § 301 is epitomized in the Senate Report: "It is apparent that until all jurisdictions, and particularly the Federal Government, authorize actions against labor unions as legal entities, there will not be the mutual responsibility necessary to vitalize collective-bargaining agreements." S. Rep. No. 105, 80th Cong., 1st Sess., p. 17. It is obvious that Congress did not intend this remedial measure to destroy the foundation upon which it was built.

This Court, in holding that the Labor Management Relations Act of 1947 operates to withdraw from the jurisdiction of the States controversies arguably subject to the jurisdiction of the National Labor Relations Board, has delineated the specific considerations which led to that conclusion:

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." *Garner* v. *Teamsters Union,* 346 U. S. 485, 490.

By contrast, Congress expressly rejected that policy with respect to violations of collective bargaining agreements by rejecting the proposal that such violations be made unfair labor practices. Instead, Congress deliberately chose to leave the enforcement of collective agreements "to the usual processes of the law."

It is implicit in the choice Congress made that "diversities and conflicts" may occur, no less among the courts of the eleven federal circuits, than among the courts of the several States, as there evolves in this field of labor management relations that body of federal common law of which *Lincoln Mills* spoke.   But this not necessarily unhealthy prospect is no more than the usual consequence of the historic acceptance of concurrent state and federal jurisdiction over cases arising under federal law.   To resolve and accommodate such diversities and conflicts is one of the traditional functions of this Court.[8]

*Affirmed.*

MR. JUSTICE BLACK concurs in the result.

---

[8] In the course of argument at the Bar two questions were discussed which are not involved in this case, and upon which we expressly refrain from intimating any view—whether the Norris-LaGuardia Act might be applicable to a suit brought in a state court for violation of a contract made by a labor organization, and whether there might be impediments to the free removal to a federal court of such a suit.   The relation of the Norris-LaGuardia Act to state courts applying federal labor law has never been decided by this Court. See *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal. 2d 45, 315 P. 2d 322.   For that matter, we have not yet ruled on the effect of Norris-LaGuardia upon the jurisdiction of *federal* courts in this area.   Compare *Local 795, Teamsters Union* v. *Yellow Transit Freight Lines, Inc.,* 282 F. 2d 345, certiorari granted, 364 U. S. 931, with *Sinclair Ref. Co.* v. *Atkinson,* 290 F. 2d 312, certiorari granted, 368 U. S. 937.   And quite obviously we have not yet considered the various problems concerning removal under 28 U. S. C. § 1441.   See *Swift & Co.* v. *United Packinghouse Workers,* 177 F. Supp. 511; *Fay* v. *American Cystoscope Makers, Inc.,* 98 F. Supp. 278.