Sam VOGEL et al., Appellants,

v.

TENNECO OIL COMPANY.

No. 23304.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 19, 1972.

Decided May 10, 1972.

Mr. John Barry Donohue, Jr., Washington, D. C., with whom Mr. Rufus W. Peckham, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Max H. Lawrence, Walker & Watson, Oklahoma City, Okl., with whom Mr. Robert E. Shaw, Houston, Tex., was on the brief, for appellee.

Before FAHY, Senior Circuit Judge, SIMON E. SOBELOFF,* Senior Circuit Judge for the Fourth Circuit, and MacKINNON, Circuit Judge.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

PER CURIAM:

Appellant Vogel commenced suit against appellee Tenneco Oil Company (hereafter "Tenneco") for damages allegedly resulting from the breach of an express provision of a written lease contract between Vogel and Tenneco. Tenneco moved for summary judgment, and Vogel filed a cross-motion for summary judgment. The District Court granted Tenneco's motion for summary judgment and denied that of Vogel. This appeal followed. We affirm.

I

The relevant facts are not in dispute. Vogel is a resident of Texas who owns a mineral interest in a certain 50-acre tract of land in Coal County, Oklahoma. In 1961, negotiations between Vogel and an agent for Tenneco took place in Texas, concerning Vogel's mineral interest in this tract. On June 29, 1961, agreement was reached, and Vogel executed an oil and gas lease with Tenneco covering the 50-acre Oklahoma tract. The lease agreement provided for the lessee, Tenneco, to pay the lessor, Vogel, $100 per acre plus certain specified royalties. Pursuant to Vogel's request, the lease contract included a specific provision that limited pooling or unitization to 40 acres for oil and 160 acres for gas.[1] It is this limiting clause which Vogel contends was breached by Tenneco.

Paragraph 5, the provision of the lease agreement with which we are herein concerned, provides:

5. Lessee may, at any time or from time to time while this lease is in force, pool or unitize the leased premises, or any part of it, and lessee's and lessor's rights and interests therein with like rights and interests in the same or other lands when in lessee's judgment it is necessary or advisable to do so. Such pooling may include all oil and gas or may be limited to one or more such substances and may extend to all such production or may be limited to one or more horizons or formations. *Unitized tracts may not exceed 40 acres for oil and 160 acres for gas, or gas in combination with liquid hydrocarbons, plus 10% acreage tolerance, except when any governmental authority prescribes or permits a larger unit as a spacing pattern or allocates a producing allowable based in whole or in part on acreage per well, any unit may be formed or reformed to embrace acreage up to the maximum content so prescribed, permitted or allocated;* or if the mineral rights in and under the leased premises are now owned in separate tracts, a unit may be formed to embrace all of the leased premises. Each unit shall be created by lessee recording in the County or Counties in which the unit is located a written instrument identifying the leases, interests and area unitized. *If production is found on a unitized tract, the entire premises covered by this lease shall be considered productive, but each unitized tract shall be a separate unit for the payment of oil and gas royalty and such royalty shall be divided among the owners of mineral rights in the unitized tract in the proportion that the mineral interest of each bears to all the mineral rights in all of the unit tract regardless of the location of the producing well or wells.* The rights conferred upon lessee by this paragraph may be exercised by it only within the period of time permitted by the rule against perpetuities.

[emphasis supplied]

On October 3, 1962, Tenneco filed an application with the Oklahoma Corporation Commission for permission to unitize a 320-acre tract which included Vogel's 50-acre tract. In February of 1963, the Corporation Commission issued an order, pursuant to Tenneco's request, creating and establishing the 320-acre

---

1. The written lease agreement was supplied by Tenneco and the 40 and 160 acre limitations in the pooling paragraph, even though specifically requested by Vogel, were part of the printed lease.

drilling and spacing unit for the production of natural gas. This order provided, *inter alia*:

> 4. That all royalty interest within such drilling and spacing unit shall be communitized and each royalty owner within said unit, as to each common source of supply, shall participate in the royalty from the well drilled thereon in the proportion that the acreage owned by him bears to the total acreage in such unit.

The Corporation Commission's order, which was opposed by Vogel at the time Tenneco's application was heard by the Commission, was appealed by Vogel to the Oklahoma Supreme Court, where it was affirmed. Vogel v. Corporation Commission, 399 P.2d 474 (Okl.1965). A petition for certiorari to the United States Supreme Court was denied.[2]

## II

■ Vogel contends that Tenneco breached paragraph 5 of the lease agreement by unilaterally applying to the Corporation Commission for permission to pool or unitize natural gas rights beyond the 160-acre limit set out in the contract and by computing the royalties due to Vogel on the basis of this expanded producing unit. We disagree.

Vogel asserts that the "exception" portion of paragraph 5 is only applicable where a unit in excess of the 40-acre/160-acre limits is unavoidably compelled by an appropriate governmental order or where permission for a larger unit is sought by both the lessor *and* the lessee. However, this interpretation is much too

narrow, for it negates the clear meaning of the language utilized in the agreement. Paragraph 5 expressly provides that "Unitized tracts may not exceed 40 acres for oil and 160 acres for gas * * * *except when any governmental authority prescribes or permits a larger unit * * * *" (emphasis supplied). Had the parties to the lease contract intended the result sought by Vogel, they certainly would not have included the words "or permits," for the language in question can only be interpreted in accordance with Vogel's contention if these two important words are ignored or read out of the provision.[3]

■■ It is an elementary principle of contract interpretation that the plain and unambiguous meaning of a written agreement is controlling, in the absence of some clear evidence indicating a contrary intention. *See* 3 Corbin on Contracts § 542 (1960). In the instant case, we are presented with contractual language which is unambiguous.[4] The language of the lease excepting acts by governmental authority expressly provides for the utilization of a natural gas production unit in excess of the 160-acre limit where an appropriate governmental agency "permits" it. Such permission was provided here by the Corporation Commission's order. The fact that it was Tenneco whose application precipitated this Commission order is irrelevant, since there is nothing in the lease agreement indicating an intention to prohibit such a unilateral request by Tenneco.[5] Furthermore, Vogel, who indicated knowledge of the subject by the bargaining he indulged in prior to exe-

---

2. 382 U.S. 815, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965).

3. Our interpretation of the 40 and 160 acre limitations in paragraph 5 does not, contrary to Vogel's assertion, completely negate the application of these limits, for it is clear that such language was only intended to impose a limitation upon the pooling or unitizing which the agreement permitted Tenneco to unilaterally engage in without the approval of any governmental body. This is not affected by our decision.

4. Although Vogel attempts to demonstrate that the exception language in question is "ambiguous," it is apparent that he is merely trying to create confusion where none exists, in order to support his untenable interpretive position.

5. Tenneco had the right under Oklahoma law to apply to the Corporation Commission for such an order. *See* Sunray DX Oil Co. v. Cole, 461 P.2d 305 (Okl.1967), cert. denied, 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183 (1969); Nisbet v. Midwest Oil Corp., 451 P.2d 687 (Okl.1968).

cuting the lease, has not contended that there was any deception or unfair dealing by Tenneco concerning the formulation of the lease contract in question, nor has he proffered any evidence demonstrating that the parties intended or agreed upon a different result than set forth in paragraph 5. Under these circumstances, Vogel is bound by the unambiguous bargain which he consented to.[6]

We similarly see no merit to Vogel's argument concerning the payment of royalties to him by Tenneco under the new expanded unit arrangement. When the Corporation Commission's order was issued, the "unitized tract" for royalty purposes—as defined in paragraph 5 of the lease agreement—was automatically expanded pursuant to that order. Tenneco has paid royalties both in accordance with the order of the Corporation Commission *and* the applicable lease agreement provision, when that provision is interpreted in consonance with the alteration of the mineral unit caused by the completely appropriate Commission order. We therefore find no breach by Tenneco of the contractual royalty provision.

Vogel finally contends that the Oklahoma Corporation Commission's order improperly impaired his contractual rights in violation of Article I, Section 10 of the United States Constitution.[7] However, since we have found that Tenneco's acts were permitted by the contract, it is apparent that this assertion is entirely without merit. The Corporation Commission's order merely modified the lease contract in a manner contemplated by the unambiguous exception language in paragraph 5. Under these circumstances, it is obvious that the Commission's order did not impair the contractual rights of the parties, but rather that it properly altered them in a manner consistent with the applicable lease agreement provision.[8]

Affirmed.

---

6. It is also important to note the following portion of paragraph 11 of the lease agreement:

> 11. All covenants of this lease, both express and implied, shall be subject to Federal and State laws, Executive Orders and Rules and Regulations, and lessee shall not suffer forfeiture or be liable in damages if performance of such covenants is prevented or changed by such laws, orders, rules or regulations. * * * *

This provision further supports the view that the type of modification caused by the Corporation Commission's order was fully contemplated by the parties to the lease contract.

7. Art. I, Sec. 10 of the United States Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ."

8. While it has not restricted our examination of this case, it is important to recognize that Vogel had full opportunity to challenge any infirmities which might have existed in the Corporation Commission's order through his direct appeal to the Oklahoma Supreme Court. *See* Vogel v. Corporation Commission, 399 P.2d 474 (Okl.), cert. denied, 382 U.S. 815, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965).