[No. 1692-1. Division One. June 3, 1974.]

HARRY L. CARR, *Appellant*, v. SETTLE CONSTRUCTION CO., INC., *et al., Respondents.*

*Carney, Stephenson, Siqueland, Badley & Smith* and *Herman S. Siqueland,* for appellant.

*Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson* and *Eugene R. Nielson,* for respondents.

WILLIAMS, J.—The plaintiff, Harry L. Carr, as officer and trustee of the Carpenters Health and Security Trust of Western Washington and of the Carpenters Retirement Trust of Western Washington, brought this action, claiming that the defendant, Settle Construction Company, Inc., had

not fully contributed to those two trusts which were created for the benefit of members of the carpenters union. Trial to the court without a jury resulted in a judgment dismissing the action. Carr appeals.

The facts are these: On December 23, 1953, Associated General Contractors (AGC), an organization composed of a number of contractors in western Washington, and the United Brotherhood of Carpenters and Joiners of America, Local Union No. 1597, entered into a collective bargaining agreement. Among other things, the agreement established two trust funds from which were to be paid certain health and retirement benefits to members of the union. The trusts were to be funded by contributions from employers of 10 cents for each hour worked by an employee-member of the union. On February 10, 1954, Settle signed a compliance agreement with the union by the terms of which it promised to abide by the AGC union contract dated December 23, 1953.

From February 10, 1954, until the date of trial, Settle partially complied by making regular reports to the trusts upon forms supplied by them. Accompanying each report was a remittance based upon the hours reported as applied to the rates specified in the current AGC union contract. Although Settle listed all of its carpenter-employees in each report, it did not report or pay for all of the hours worked, but only so many as it believed would constitute the minimum hours necessary to qualify its carpenter-employees for the benefits of the trusts. If all hours worked had been reported and paid for, the employees would be entitled to substantially greater benefits.

Annually, since 1954, the union and AGC executed a collective bargaining agreement. For the most part, the terms of these agreements were the same as the one which was signed on December 23, 1953. There were slight modifications to the sections on working rules, and health and security. In the health and security section, the trust provisions were strengthened, and the rate of contributions in-

creased. Under the working rules section, wages were adjusted upward several times.

The issue is whether or not Settle was bound to comply with the AGC union agreements which included the provisions for the operation of the two trusts. The trial court held that it was not. We disagree.

The compliance agreement, which was signed on February 10, 1954, may be considered in two ways: Settle contends that it refers to the precise contract between the AGC and the union then in existence, *i.e.,* the December 23, 1953, agreement, only so long as that contract was not modified or changed in any respect. This view is based upon the following language of the AGC union agreement:

> (a) This Agreement shall become effective *January 1, 1954,* and shall remain in full force and effect until December 31, 1955, and shall be automatically renewed from year to year thereafter, provided, however, that any party hereto desiring changes or modifications of the Agreement shall give notice thereof in writing to the other party not later than March 31, 1955, or any given year thereafter. Such notice and any determinations made pursuant thereto shall in no way affect the Agreement for the balance of that year.

and the part of the compliance agreement which states that it

> is effective until *Jan. 1, 1956,* and shall continue thereafter, from year to year, unless either party shall deliver to the other party at least ninety (90) days prior to the anniversary of the above termination date, a written notice of an intention to terminate, provided, however, this Agreement shall terminate automatically without any notice if the contract between the Union and the Employer is terminated.

In essence, Carr's position is that the compliance agreement applied to a basic contractual relationship between AGC and the union, and continued indefinitely, even though the contract between those parties was from time to time modified in some respects. Carr directs attention to the following provision of the compliance agreement:

I [Settle] hereby approve and acknowledge responsibility for adherence to the attached agreement dated *12-23-1953* by and between the Seattle, Tacoma and Mountain Pacific Chapters of the Associated General Contractors of America, Inc., and including the persons, firms, or corporations who are members thereof, and other associations of contractors and individual contractors that may become signatory hereto, acting for and on behalf of their members, hereinafter referred to as the Employer, and District Councils, Local Unions and the Washington State Council of Carpenters (representing Local Unions by request) of the United Brotherhood of Carpenters and Joiners of America, hereinafter referred to as the Union, and *I further agree to abide by any and all changes to this or any subsequent agreements that are arrived at through usual methods of collective bargaining between the two parties mentioned herein.*

(Italics ours.)

In resolving the issue, the following rule, announced in *In re Estate of Garrity,* 22 Wn.2d 391, 156 P.2d 217 (1945), and quoted with approval in *Burch v. Rice,* 37 Wn.2d 185, 222 P.2d 847 (1950), and *Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920 (1970), is pertinent:

In ascertaining the intention of parties to a written agreement, we must look to the wording of the instrument itself as made by the parties, view it as a whole, and consider all of the circumstances surrounding the transaction, including the subject matter together with the subsequent acts of the parties to the instrument. Courts will give to words in a contract the ordinary or common meaning. A liberal construction will be given to contracts in order that they may be given effect and to carry out the intention reflected therein.

*In re Estate of Garrity, supra* at 398.

In *Eagle Ins. Co. v. Albright, supra,* it is said at page 266:

Where the meaning of a written contract is unclear or susceptible to more than one meaning, the subsequent acts of the parties in relation to the agreement may be used as an aid in arriving at the meaning intended by the parties.

The subsequent conduct of the parties is especially sig-

nificant in the case before us. Carr at all times processed the Settle account as though the current AGC union contract applied. He kept the trust records, receipted for the money Settle paid in, and honored claims for benefits as required by the terms of the trust section.

In turn, Settle made regular monthly reports upon forms provided by Carr. These reports were signed either by Wesley Settle, president of Settle, or by the company's authorized bookkeeper. Settle remitted to the trust on the basis of the hours reported and at the rate specified in the then current AGC union contract. Settle conducted its business as though it were bound. It paid the current union wage scale, hired its carpenters through the union hiring hall, and permitted the business agent of the union to visit its projects.

Mr. Settle stated that he contributed to the trust funds so that his employees would have full medical and retirement benefits. He also testified that if he had not paid into the trusts, he would have encountered difficulty with the union.

■ The following principle, enunciated by the Supreme Court of the United States, and followed in *National Credit Co. v. Casco Co.*, 173 Wash. 275, 22 P.2d 670 (1933), and in *Great Western Theatre Equip., Inc. v. M. & E. Theatres, Inc.*, 164 Wash. 557, 3 P.2d 1003 (1931), is applicable:

> "It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct[s] himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations." *Wiggins Ferry Co. v. Ohio & Mississippi R. Co.*, 142 U.S. 396, 408.

*National Credit Co. v. Casco Co., supra* at 276. The inescapable conclusion to be drawn from the facts presented is that it was the intention of the parties that Settle was to comply

with the trust provisions of the successive AGC union contracts.

Settle argues that on several occasions the union supplied him with new compliance agreements which were never signed, thus proving that it had no intention of continuing the arrangement. After 15 years of operating under the terms of the collective bargaining agreements, Settle Construction Company is estopped to deny that its original promise did not bind it to successive AGC union contracts. *Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 461 P.2d 538 (1969); *DeBritz v. Sylvia,* 21 Wn.2d 317, 150 P.2d 978 (1944).

Finally, Settle argues that only federal law fashioned by federal courts is applicable because the Labor Management Relations Act (Taft-Hartley Act) § 301, 29 U.S.C. § 185 (1947) requires it. *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957). If this is so, the following federal cases support the position above adopted. *Lewis v. Kepple,* 185 F. Supp. 884 (W.D. Penn. 1960); *Lewis v. Kerns,* 175 F. Supp. 115 (S.D. Ind. 1959); *Lewis v. Cable,* 107 F. Supp. 196 (W.D. Penn. 1952). *Also see Weber v. Anspach,* 256 Ore. 479, 473 P.2d 1011 (1970).

The judgment is reversed and the cause remanded for a trial on the issue of the actual amount that is due and owing by Settle Construction Company to the trusts.

FARRIS and CALLOW, JJ., concur.