[No. 3135-1. Division One. May 17, 1976.]

Trust Fund Services, *Respondent*, v. Walter Heyman, *Appellant.*

*Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson* and *Eugene R. Nielson,* for appellant.

*Donaldson & Kiel, P.S.,* and *Duane D. Kiel,* for respondent.

WILLIAMS, C.J.—This action was brought by Trust Fund Services, a nonprofit corporation, as assignee of the Retail Clerks Health and Welfare and Pension Trust Funds, to require Walter Heyman to make certain contributions to a fund it holds for the benefit of his employees. The trial judge decided partially in favor of each party. Heyman appeals and Trust Fund Services cross-appeals. The questions presented concern the existence of and duration of a collective bargaining agreement between Heyman and a labor union and the legality thereof.

In its complaint, Trust Fund Services alleges that Heyman is party to a collective bargaining agreement formed in October 1969 with a labor union and is thereby obligated to make monthly contributions to Trust Fund Services, assignors for the benefit of his employees. It is alleged that he is delinquent in making those contributions. Heyman's an-

swer admits the formation of such a contract on August 9, 1971, but not before, and alleges that the contract requiring contributions applies only to those of his employees who are members of a local retail clerks union. Further in his answer, Heyman avers that the contract is illegal because the union did not represent a majority of his employees when the contract was signed, as required by 29 U.S.C. § 158(a)(1) and (b)(1)(A) (1971).

The trial court found that the only contract between Heyman and the union (the Teamsters Union succeeded in interest to the Retail Clerks Union, a fact not in issue) was made on August 9, 1971, and, except for a Mr. Anderson, contributions were due for all of Heyman's employees regardless of membership in the union.

Heyman's first contention is that the trial court erred in denying his motion to continue the case until a decision on an action involving the legality of the contract then pending in Federal District Court was handed down. The pertinent section of the statute, section 301(a) of the Labor Management Relations Act, 1947, provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

This section has been construed to mean that federal and state courts have concurrent jurisdiction to resolve controversies over collective bargaining agreements. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962). Heyman argues, however, that because the federal courts are charged with fashioning the substantive law from the national labor policy expressed by Congress, *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957), the law of this case must be settled in the action pending in the

Federal District Court rather than in the state court system.

The substantive rules of federal labor law apply to the action whether the proceeding is instituted in federal court or state court. *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962). Both courts have the power to hear and determine the subject in controversy. *Charles Dowd Box Co. v. Courtney, supra; Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923). Therefore, the trial court was correct in continuing to function on the case. If it erred in the application of the substantive labor law as fashioned by the federal court, there is an adequate apparatus for appeal within the state court system. If that should not prove satisfactory to either litigant, the United States Supreme Court may take jurisdiction to make necessary corrections. *Rooker v. Fidelity Trust Co., supra.*

Heyman's second contention is that the contract is illegal because it violates section 8(a)(1) and (b)(1)(A) of the National Labor Relations Act of 1947, in that the union did not represent a majority of Heyman's employees when the contract was made. There are three reasons why this contention must be rejected. The first reason is that the determination of an unfair labor practice under the National Labor Relations Act of 1947—the illegality claimed here—is exclusively a function of the federal system. As was said in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959),

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of in-

dustrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

(Footnote omitted.)

Thus, although the State has authority to construe and enforce labor contracts, it does not have the authority to invalidate a labor contract, proper on its face, because one of the parties has engaged in an unfair labor practice. Heyman had the right to litigate this question in federal court. 28 U.S.C. § 1441 (1971). He did not make timely application to do so.

The second reason is that Heyman's claim of an unfair labor practice was made too late. Section 10(b) of the act, 29 U.S.C. § 160(b) (1971) reads as follows:

*Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, . . .

The United States Supreme Court in fashioning a common law to support the national labor policy has decided that this section applies to suits on collective bargaining agreements. *Local 1424, IAM v. NLRB,* 362 U.S. 411, 4 L. Ed. 2d 832, 80 S. Ct. 822 (1960). Heyman made his charge of an unfair labor practice long after the 6-month period had expired. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 29 L. Ed. 2d 473, 91 S. Ct. 1909 (1971).

The third reason is that an unfair labor practice is not available as a defense to an action by trustees for contributions based upon hours of labor already performed. *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 4 L. Ed. 2d 442, 80 S. Ct. 489 (1960); *Lewis v. Seanor Coal Co.,* 256 F. Supp. 456 (W.D. Pa. 1966).

In its cross-appeal, Trust Fund Services makes two assignments of error: the first is directed to the finding of the court that Heyman did not contract with the union in 1969;

the second is that the court erred by reforming the contract to exclude Mr. Anderson from its operation because the parties had that unwritten understanding.

The following findings of fact are pertinent:

> The Employer did not sign a collective bargaining agreement in 1969 with the Union as the Employer denied signing such an agreement, no signed agreement could be produced and no contemporaneous correspondence concerning the signing of the agreement could be produced.

Finding of fact No. 3.

> The Employer paid contributions beginning in October 1969, through February 1974, on behalf of his employees who were, and became members of the union and the Retail Clerks Welfare Trust paid benefits to such employees and their dependents, and pension credit were [sic] earned by such employees.

Finding of fact No. 4.

> During the period October 1969 through February 1974, the Employer deleted and added certain of his employees from reports made to the Retail Clerks Welfare and Pension Trust (P.E. No. 9).

Finding of fact No. 5.

> United Administrators, Inc., the Administrator for the Retail Clerks Welfare and Pension Trust, prepared and mailed, and the Employer received the originals of the letters included in P.E. No. 7.

Finding of fact No. 6.

> The performance of the Employer in making reports and payments to the Retail Clerks Welfare and Pension Trusts did not change from October 1969 through February 1974.

Finding of fact No. 7.

> The Employer signed the collective bargaining agreement (P.E. No. 3) and it is the entire agreement with the Union except that the parties failed to reduce to writing their understanding that H. Allan Anderson would not be covered by such agreement.

Finding of fact No. 8.

> There was no agreement that the collective bargaining

agreement (P.E. No. 3) would apply only to members of the Union.

Finding of fact No. 9.

 The court's conclusions of law and judgment that a collective bargaining agreement was not entered into in 1969 follows from finding No. 3, only. In his oral opinion, the trial judge said,

> The testimony is that the contract that would have been signed, if it were signed, was identical to Exhibit No. "2". So, I don't find that the contract, if it were signed, fails for lack of identification as to its terms.

As seen in findings of fact Nos. 4 through 9, the parties did conduct themselves as though there were a contract. The following rule from *National Credit Co. v. Casco Co.*, 173 Wash. 275, 22 P.2d 670 (1933), quoted as controlling on similar facts in *Carr v. Settle Constr. Co.*, 11 Wn. App. 336, 340, 522 P.2d 849 (1974), applies:

> "It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct[s] himself in such a manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations." *Wiggins Ferry Co. v. Ohio & Mississippi R. Co.*, 142 U.S. 396, 408.

It is significant that as early as October 1969, Heyman received a letter from the administrators of the trust which said in part as follows:

> We have been advised that you are to commence participation in the Retail Clerks Health & Welfare and Pension programs commencing with contributions for OCTOBER. Health & Welfare coverage and SEPT 1969 Pension Hours. We are therefore sending you the necessary information to initiate your participation in those programs.

Exhibit No. 7.

The letter then details instructions for employee registration and how Heyman is to report. He signed and sent the first report to the trust on November 15, 1969, and submitted monthly signed reports thereafter.

In view of the facts as found by the court, fully supported by the evidence, Heyman is estopped to deny that he entered into the collective bargaining agreement with the union in 1969.

The second assignment of error on the cross-appeal relates to the trial court's finding that

> The Employer signed the collective bargaining agreement (P.E. 3) [dated August 9, 1971] and it is the entire agreement with the Union except that the parties failed to reduce to writing their understanding that H. Allan Anderson would not be covered by such agreement.

Finding of fact No. 8.

■ 29 U.S.C. 158(d) (1971) permits modification of a collective bargaining agreement in an industry affecting interstate commerce (the situation here) only if certain procedures are followed. *Gatliff Coal Co. v. Cox*, 152 F.2d 52 (6th Cir. 1945). The following quotation from *Lewis v. Harcliff Coal Co.*, 237 F. Supp. 6, 7-8 (W.D. Pa. 1965) applies:

> Rather we are confronted with the question whether a written collective bargaining agreement can be entered into as an ostensible facade while the actual agreement is couched in different terms. Such a practice, we are convinced, is precluded as contrary to federal public policy in the labor relations field. Congressional policy in 29 U.S.C. 186(c)(5)(B) strictly regulates the establishment of welfare trusts and requires that their terms be specified in detail in writing. It would frustrate federal regulatory policy if a union and employer could enter into a fictitious or ostensible agreement different from their real agreement. Moreover 29 U.S.C. 158(d) with respect to collective bargaining agreements imposes the requirement that they be reduced to writing upon request. That policy would also be violated if a union and employer could concoct a secret conspiratorial agreement different from that proclaimed to the public and to the union

members. In this connection it must be remembered that determination of the extent and nature of the consequences flowing from federal legislation is a federal question, and that where "the policy of the law is so dominated by the sweep of federal statutes" that legal relations which they affect are governed by rules of law derived therefrom, conflicting state law and policy must yield to the legislative intent of Congress.

Therefore, the terms of the collective bargaining agreement between Heyman and the union may not be changed by an oral side agreement to exclude Mr. Anderson.

The judgment is affirmed on the main appeal, reversed on the cross-appeal, and the cause is remanded for a trial on the issue of the actual amount that is due and owing by Heyman to Trust Fund Services including that to be paid on the account of Mr. Anderson.

JAMES and CALLOW, JJ., concur.

Petition for rehearing denied June 30, 1976.

Review granted by Supreme Court November 10, 1976.