**Wade H. SHERIFF et al., Appellants,**

v.

**MEDEL ELECTRIC COMPANY,**
**Appellee.**

**No. 79–446.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1980.

Decided Feb. 29, 1980.

Peter E. Derry, Washington, D. C., for appellants.

Charles B. Sullivan, Jr., Washington, D. C., for appellee.

Before GALLAGHER, MACK and FER-REN, Associate Judges.

FERREN, Associate Judge:

■ Appellants are trustees of the International Brotherhood of Electrical Workers (IBEW) Trust Fund, which provides health and welfare benefits for electrical workers and their dependents. They sued Medel Electric Company (Medel), an employer of electrical workers, for contributions allegedly due on behalf of Medel's employees pursuant to a contract between Medel and IBEW Local 26. After trial, the court ruled for Medel, concluding that the trustees had failed to prove the existence of a contract. We hold that the trial court was "plainly wrong." D.C.Code 1973, § 17–305(a). Accordingly, we reverse.[1]

## I.

On January 2, 1968, Local Union Number 26 of the IBEW entered into an agreement with Medel providing "that the wage scales, insurance provisions, and all other terms and conditions of employment now in effect by agreement between the Union and the National Electrical Contractors' Association [NECA], Washington Chapter, shall apply to and be in effect between the Union and the Company."[2] This agreement was to remain in effect from January 2, 1968 to June 30, 1970, and was "automatically [to] continue in full force and effect from year to year, [unless] either party gives written notice to. the other of a desire to terminate the agreement, whereupon this agreement shall terminate sixty days after such written notice is given."

As required by the collective bargaining agreement between the IBEW and NECA,

Medel paid a sum per hour worked by each covered employee into the IBEW Trust Fund. Medel's payments continued through January 1976. In turn, Local 26 carried out its obligation to refer electrical workers to Medel. Medel ceased making trust fund contributions, however, in February 1976, without notifying Local 26 of an intent to terminate the contract. At that time, Medel employed 34 electricians who had been referred by the Local.

The trustees contend that contributions on behalf of these employees must continue until Medel terminates its obligation by written notice, effective 60 days thereafter. Alleging that no such notice has been given, the trustees seek an accounting and payment of the trust fund contributions due under the terms of the collective bargaining contract. Medel responds that it had no contractual obligation to continue contributing because it never signed forms of agreement sent by Local 26 requesting consent to the revised terms of the collective bargaining agreement between the national union and NECA. Medel also argues that in April 1976, Local 26 committed a breach of its agreement with Medel by refusing to ·refer any more electricians. This breach, according to Medel, precludes any liability for contributions thereafter.

The trial court found "that the plaintiff has failed to carry the burden of proof by a preponderance of the evidence with respect to the contract and its existence at the time that these funds became due and payable by the defendant." The court also apparently agreed that the union's refusal to refer additional employees barred recovery by the trustees: "I think that if [the con-

1. The trial court had jurisdiction to consider the trustees' complaint. The Labor Management Relations Act, 29 U.S.C. § 185 (1976) provides for federal district court jurisdiction to consider "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." The Supreme Court has held, however, that the state courts have concurrent jurisdiction to interpret such contracts. See Humphrey v. Moore, 375 U.S. 335, 342–44 & n.6, 84 S.Ct. 363, 367–69 & n.6, 11 L.Ed.2d 370

(1964); Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). This concurrent jurisdiction extends to the Superior Court of the District of Columbia. Lee Washington, Inc. v. Washington Motor Truck Transp. Employees Health & Welfare Trust, D.C.App., 310 A.2d 604, 605–06 (1973).

2. NECA is an employer organization which negotiated a collective bargaining agreement with the IBEW on behalf of individual employers. Medel has never been a member of NECA.

tract] was . . . breached by the plaintiff that that would release the plaintiffs [*sic*] from the terms and the conditions." The trustees' motion for a new trial or to amend the judgment was rejected. They have appealed.

## II.

We cannot agree with the trial court.

A. First, the terms of the January 2, 1968 agreement plus Medel's concession that it never gave the required notice confirm that a binding contract existed in February 1976. Medel concedes that it was bound to observe the terms of the collective bargaining contract from January 2, 1968 to June 30, 1970. It argues, however, that we cannot properly imply an agreement that Medel was obligated to continue its adherence to that contract thereafter. We need not imply anything. The express terms of the contract between Medel and Local 26 itself refute Medel's contention. These parties plainly agreed to adhere to the collective bargaining contract after June 30, 1970, unless one party gave a written notice of termination. Since Medel concedes that it gave no such notice, it remains bound by the terms of the collective bargaining contract. We cannot read in ambiguity or a contrary intent that disregards the terms of the Medel-Local 26 contract itself. *See Vogel v. Tenneco Oil Co.*, 150 U.S.App.D.C. 383, 385, 465 F.2d 563, 565 (1972); *Columbia Hospital for Women & Lying-In Asylum v. United States Fidelity & Guaranty Co.*, 88 U.S.App.D.C. 251, 256, 188 F.2d 654, 659, *cert. denied*, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618 (1951).

Medel urges, alternatively, that its refusal to sign agreements to adhere to new collective bargaining contracts after June 30, 1970 relieved it from any further obligation under its agreement with Local 26. Again, Medel's argument is defeated by the clear language of its contract with Local 26, which incorporates by reference the terms

and conditions of employment set forth in the main collective bargaining contract between the IBEW and NECA, including "terms and conditions of employments made effective . . . by modification of existing agreements." When a contract incorporates another writing, the two must be read together as the contract between the parties.[3] *Weber v. Anspach*, 256 Or. 479, 483, 473 P.2d 1011, 1013 (1970); *see Carpenters Trusts v. Algene Construction Co.*, 11 Wash.App. 838, 840, 525 P.2d 834, 836 (1974); *cf. Trans-Bay Engineers and Builders, Inc. v. Hills*, 179 U.S.App.D.C. 184, 193, 551 F.2d 370, 379 (1976) (two or more contemporaneous, written agreements executed as a package should be construed together, consistently, even if all parties do not sign each document). Medel accordingly has bound itself to the terms of collective bargaining contracts entered into after June 30, 1970, including contractual provisions increasing the rate of contribution to the trust fund. The contract contains no requirement that Medel manifest its continued adherence by affirmatively signing updated forms of the collective bargaining agreement, and there is no ambiguity that would relieve Medel of its obligation to comply with all such amendments.

Even if Medel did intend to terminate its agreement with Local 26 by refusing to sign the later agreements, Medel did not manifest that intent in the manner established by its contract with Local 26: written notice of an intent to terminate in 60 days. In *Pio v. Kelly*, 275 Or. 585, 552 P.2d 1301 (1976) (en banc), the Oregon Supreme Court interpreted similar contractual provisions. The plain language of the contract between employer and union incorporated a master collective bargaining contract, including changes from time to time in that master contract. The court held that these terms bound the employer to the new collective bargaining contracts, absent 60 days' written notice. *Id.* at 598–99, 552 P.2d at 1309.

---

**3.** We therefore find no relevance in Medel's argument that it was not a member of NECA, and that NECA therefore could not bind Medel. No question of agency is presented here. Medel and Local 26 simply incorporated by reference the IBEW–NECA agreement—whatever it turned out to be—as the definition of Medel's relationship with its employee-electricians.

■ B. Although the terms of the Medel-Local 26 agreement are clear, there is another reason why Medel must be said to have bound itself to the IBEW–NECA contract: Medel's own course of performance. Medel observed the terms of the IBEW–NECA contract for eight years, from January 1968 through January 1976, by making monthly contributions to the trust fund—unlikely conduct for one not bound to do so.

In *Carr v. Settle Construction Co.*, 11 Wash.App. 336, 522 P.2d 849 (1974), the court considered and rejected an employer's claim that failure to sign new agreements relieved it of obligations under a contract. In *Carr*, a trustee sued an employer which had not made full payment to a union employees' trust fund. The contract between the union and employer incorporated by reference a master collective bargaining agreement, including periodic modifications. Like Medel, the employer argued that its failure to sign agreements to abide by new master collective bargaining contracts defeated the trustee's action. Despite the employer's failure to sign, the court held that the employer was estopped from denying the ongoing vitality of the contract when it had continued for years to comply with its terms. *Id.* at 341, 522 P.2d at 852. *Accord, Trust Fund Services v. Heyman*, 15 Wash.App. 452, 459, 550 P.2d 547, 551 (1976), *cert. denied*, 434 U.S. 987, 98 S.Ct. 618, 54 L.Ed.2d 483 (1977).

We reach the same result here. Courts have not readily found terminations of employer participation in trust agreements intended to provide security and protection for employees. *See United Brick & Clay Workers of America v. District 50, UMW*, 439 F.2d 311 (8th Cir. 1971) (union defeated in representation election but employer could not agree to terminate trust fund payments without proper negotiations with the present employees' bargaining agent); *International Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers v. Stegmaier Brewing Co.*, 338

F.Supp. 1137 (M.D.Pa.1972) (pension agreement was not automatically terminated when one union succeeded another, where agreement does not expressly so provide); *Schlecht v. Bliss*, 271 Or. 304, 532 P.2d 1 (1975) (defendant-employer's answer in litigation was insufficient notice of termination of trust agreement which called for continuation until 60 days after written notice). We conclude that, in the absence of written notice of termination, Medel's course of conduct acknowledged an agreement with Local 26 after June 30, 1970, and thus estopped it from denying its obligation to pay the current rate of contribution to the trust fund required by the IBEW–NECA collective bargaining contract, as amended from time to time.

### III.

Medel also argues that even if its contract with Local 26 was in effect in February 1976, it at least was discharged from any obligation to make contributions to the trust fund after April 1976, when Local 26 committed a breach of contract by refusing to refer any more electricians to Medel. Even if we assume that the Local did act as Medel alleges,[4] a breach of contract by the union is not a defense against the trustees here.

In *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), the Supreme Court considered a claim by the trustees of the UMW Trust Fund that Benedict, a coal producer, had made inadequate contributions to the trust under the terms of the collective bargaining agreement. Benedict responded that it had suffered damages in strikes and work stoppages by the union, in violation of the collective bargaining agreement. Benedict asserted the union's breach as a defense and cross-claimed for damages.

■ While the Court stated that it may be desirable generally to limit third-party beneficiary recovery to amounts in excess of any damage suffered by the promisor,

---

4. The Local 26 employee in charge of referrals testified at trial that he made his last referral to Medel on June 18, 1976, and that referrals were discontinued because of Medel's refusal to pay into the trust fund.

that approach was inappropriate in cases involving labor trusts.[5] *Id.* at 467–68, 80 S.Ct. at 494–95. The employer-promisor was found to have an interest as strong as the union's in the continued functioning of the trust, because the "welfare fund was jointly created by the coal industry and the union" for the purpose of providing employee security. *Id.* at 468, 80 S.Ct. at 495. In the event of failure of the trust plan, the employer presumably would have to provide some other benefits package for employees. Individual employers, therefore, should not be allowed to drain the trust by recovering what amount to damage awards against the union, because the burden of compensating for the lost trust funds would fall on workers and other employers, not just on the union. *Id.* at 469, 80 S.Ct. at 495. Considerations of national labor policy also were found to militate against assertion of such a defense against a trust. The employees and their dependents ultimately would be hurt unfairly by a rule permitting assertion of defenses against the trustees; individual members "have little opportunity to prevent the union from committing actionable wrongs" and plan beneficiaries, especially retirees and dependents, are "without any direct voice in the conduct of union affairs." *Id.* at 470, 80 S.Ct. at 496. Thus, the union must be the sole source of recovery for injuries it inflicts; defenses or set-offs based on union activity are unavailable to an employer in a suit brought by welfare fund trustees.[6]

 Medel argues that *Benedict* is inapplicable because, unlike Benedict, Medel was not a direct party to the collective bargaining contract. All of the policy reasons expressed in *Benedict*, however, extend to a non-signatory employer which has adopted the collective bargaining contract by reference. Medel also has an interest in the survival of the trust, because it presumably would have to pay for some benefit plan if the trust were to fold due to employer damage claims more properly directed at the union. Also, electrical employees and their dependents, the ultimate beneficiaries of the trust, would be harmed as much by damage claims asserted by a non-signatory employer as by an employer party to the contract. We hold, therefore, that any grievance of Medel against Local 26 cannot be asserted against the trustees in this suit.[7]

### IV.

We reverse and remand to the trial court for entry of judgment for the plaintiff-appellants and a determination of damages.

*Reversed and remanded.*

---

5. Employees benefited by union trust funds are third-party beneficiaries of collective bargaining contracts. *See Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974). The trustees, therefore, may sue on behalf of employees affected by an employer's refusal to contribute to the trust. *See Paul v. Lindgren*, 375 F.Supp. 843, 849–50 (N.D.Ill.1974); *Lewis v. Kerns*, 175 F.Supp. 115, 120 (S.D.Ind.1959).

6. *Benedict* has been consistently followed and applied in varying factual contexts. *See Manning, supra* at 1313 (non-member signatory to a collective bargaining contract could not assert a defense of inadequate representation by union in a suit by trustees); *Lewis v. Mill Ridge Coals, Inc.*, 298 F.2d 552, 556–57 (6th Cir. 1962) (failure of consideration is not available to employer as a defense, although it was plaintiff-

trustees who allegedly did not provide consideration); *Owen v. One Stop Food & Liquor Store, Inc.*, 359 F.Supp. 243, 246–47 (N.D.Ill. 1973) (trustees are not subject to arbitration clause in collective bargaining contract).

7. This holding also applies to Medel's contention that it did not have to contribute to the trust fund on behalf of an employee allegedly refused union membership because of his age. If the union did commit an unfair labor practice in this employee's case, that claim must first be presented to the NLRB; it cannot be asserted as a defense here. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245–46, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959); *Manning, supra* at 1313; *Trust Fund Servs., supra*, 15 Wash.App. at 456, 550 P.2d at 549–50.