**In re McFARLIN'S INC., Debtor.**

**Bankruptcy No. 82–20306.**

United States Bankruptcy Court,
W.D. New York.

Jan. 28, 1985.

Siegel, Sommers & Schwartz by Lawrence C. Gottlieb, New York City, for creditor's committee.

Chamberlain, D'Amanda, Oppenheimer & Greenfield by Michael Harren, Rochester, N.Y., for Amalgamated Ins. Fund.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor, McFarlin's Inc., has objected to the claim of the Amalgamated Insurance Fund which is seeking a first priority as an expense of administration claim under 11 U.S.C. § 507(a)(1) for some $57,969.76. This claim arises from McFarlin's withdrawal liabilities as calculated pursuant to Subtitle E of ERISA 29 U.S.C. 1381 et seq., commonly, referred to as the Multiemployer Pension Plan Amendments of 1980. The creditor's committee has applied to the Court for an Order reclassifying the claim from a first priority to a general unsecured claim. The parties have stipulated to the facts.

From the stipulation and the documents on file with this Court, it appears that McFarlin's was a party to a collective bargaining agreement with the Rochester Joint Board of the Amalgamated Clothing & Textile Worker's Union, AFL-CIO, covering employees in the alteration department. The agreement includes a supplemental agreement pursuant to which contributions were required to be made to the Amalgamated Insurance Fund. McFarlin's at all the times relevant was engaged in the sale at retail and alterations of men's and boy's clothing.

On March 16, 1982, McFarlin's filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. After the filing of the petition in Chapter 11, McFarlin's was authorized and did continue to operate as a debtor-in-possession. Between March of 1982 and November of 1982, McFarlin's continued to operate the alterations department employing members of the Union, and complying fully with the collective bargaining agreement making all required contributions to Amalgamated In-

surance Fund. On or about November 13, 1982, McFarlin's closed its alterations department and continued only its retail department. By that action, and effective that date, McFarlin's permanently ceased all operations which employed union members covered by the plan.

Pursuant to Subtitle E of ERISA 29 U.S.C. 1381 et seq., commonly referred to as the Multiemployer Pension Plan Amendments of 1980, the trustees of the Amalgamated Insurance Fund determined that McFarlin's was subject to a withdrawal liability of $57,969.76 on the basis of the allocation of the unfunded vested benefits. The trustees of the Amalgamated Insurance Fund duly filed a claim for $57,969.76 in the Chapter 11 proceeding seeking to have the claim treated as an expense of administration entitled to a first priority pursuant to 11 U.S.C. § 507(a)(1).

Subsequently, after McFarlin's went out of business, the creditor's committee proposed and had approved a liquidation plan for McFarlin's which was accepted by the creditors and approved by the Court on September 1, 1984. As part of the confirmation order, the Court confirmed the creditor's committee's plan of reorganization. Article VI of the plan confirmed, rejected all executory contracts not confirmed by the debtor.

The Fund argues that their claim is entitled to administrative priority as an expense of administration within the meaning of 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1); and that the Bankruptcy Code provides that expenses incurred by a debtor-in-possession after the filing of a Chapter 11 shall be treated as an administrative expense and since the withdrawal liability arose from the cessation of covered operations by the debtor after the filing of the petition, that the debtor is, therefore, liable.

But, in *In re National Labor Relations Board v. Bildisco,* —— U.S. —— at page ——, 104 S.Ct. 1188 at page 1199, 79 L.Ed.2d 482 the Court said at page 499:

> ... But the filing of the petition in bankruptcy means that the collective-bargain-

ing agreement is no longer immediately enforceable, and may never be enforceable again. Consequently, Board enforcement of a claimed violation of § 8(d) under these circumstances would run directly counter to the express provisions of the Bankruptcy Code and to the Code's overall effort to give a debtor-in-possession some flexibility and breathing space. See HR Rep No. 95–595, p 340 (1977). We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d). Cf. *Allied Chemical Workers,* supra [404 U.S. 157], at 187, 30 L Ed 2d 341, 92 SCt 383 [401]; *Dowd Box Co. v. Courtney,* 368 US 502, 510–513, 7 L Ed 2d 483, 82 SCt 519 [524–526] (1962).

and in discussing the language of 11 U.S.C. § 365, —— U.S. at page —— – ——, 104 S.Ct. at page 1194–1195, 79 L.Ed.2d at page 492–93:

> by its terms includes all executory contracts except those expressly exempted, and it is not disputed by the parties that an unexpired collective-bargaining agreement is an executory contract. Any inference that collective-bargaining agreements are not included within the general scope of § 365(a) because they differ for some purposes from ordinary contracts, see *John Wiley & Sons, f Inc. v. Livingston,* 376 US 543, 550, 11 L Ed 2d 898, 84 SCt 909 (1964), is rebutted by the statutory design of § 365(a) and by the language of § 1167 of the Bankruptcy Code. The text of § 365(a) indicates that Congress was concerned about the scope of the debtor-in-possession's power regarding certain types of executory contracts, and purposely drafted § 365(a) to limit the debtor-in-possession's power of rejection or assumption in those circumstances. Yet none of the express limitations on the debtor-in-possession's general power under § 365(a) apply to collective-bargaining agreements. Section 1167, in turn, expressly exempts collective-bargaining agreements subject to

the Railway Labor Act, but grants no similar exemption to agreements subject to the NLRA. Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this instance indicates that Congress intended that § 365(a) apply to all collective-bargaining agreements covered by the NLRA. (footnote omitted).

The Court said in *Bildisco*, "We conclude that from the filing of a petition in bankruptcy until formal acceptance, the collective-bargaining agreement is not an enforceable contract within the meaning of NLRA § 8(d)". — U.S. at ——, 104 S.Ct. at 1199, 79 L.Ed.2d at 499. At page —— U.S. ——, 104 S.Ct. 1198, 79 L.Ed.2d 497 the Court in *Bildisco* said:

In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time. 11 U.S.C. § 365(d)(2). In contrast, during a Chapter 7 liquidation the trustee has only 60 days from the order for relief in which to decide whether to accept or reject an executory contract. 11 U.S.C. § 365(d)(1). It seems to us that this difference between the two types of proceedings reflects the considered judgment of Congress that a debtor-in-possession seeking to reorganize should be granted more latitude in deciding whether to reject a contract than should a trustee in liquidation.

Following the criteria laid down in *Bildisco* the pension plan in question is an executory contract and 11 U.S.C. § 365 does apply.

The argument the Fund makes that the permanent obligation under 29 USCS § 1381 is established when the debtor stops working will not hold because in looking at 29 USCS § 1383(a), the determining factor of such withdrawal is the permanent cessation of an obligation to contribute under the plan or the permanent cessation of all covered operations under the plan. Here, until, the revocation of the contract by the confirmed plan there was no permanent cessation.

As to the classification of the claim 11 U.S.C. § 365(g) provides:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition; or

Therefore, this claim by the Fund is a general unsecured claim arising immediately before the date of filing and should be treated as such, and it is so ordered.