**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 8, AFL–CIO, Plaintiff,**

v.

**C & M ELECTRIC, Defendant.**

**No. 89CV7616.**

United States District Court, N.D. Ohio, W.D.

Feb. 27, 1990.

Jeffrey I. Julius, Gallon, Kalniz & Iorio, Toledo, Ohio, for Local 8, Intern. Broth. of Elec. Workers.

Stephen J. Stanford, Fuller & Henry, Toledo, Ohio, for C & M Elec.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This action comes before the Court on defendant's, C & M Electric, motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) and plaintiff's opposition thereto. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Plaintiff, International Brotherhood of Electrical Workers, Local Union No. 8, AFL–CIO ("Union") represents electricians in the construction industry. For three days beginning September 11, 1989, the union picketed a construction site in Napoleon, Ohio at which the defendant, an electrical contractor, was engaged in performing electrical work relating to the construc-

tion of a Wal–Mart. The union was protesting what it perceived to be defendant's payment of substandard wages and benefits to its employees. On the third day of picketing, September 13, plaintiff Union and defendant company reached an agreement whereby the union would cease picketing the job site in exchange for the company's promise to hire union employees for all of the remaining electrical work at the Wal–Mart construction project. At no time before or since this agreement did the union represent any of the company's employees. Plaintiff alleges that approximately one month after this initial agreement between the union and the company, another agreement was reached. This agreement essentially reiterated the first one in greater specificity, naming Laibe Electric as the union employees who were to continue the Wal–Mart electrical work, allowing the defendant's current employees one day to remove their tools and leave the job site, and permitting defendant to retain one of its former employees strictly to aid in the transition from non-union employees to union employees. Upon learning of defendant's intention not to comply with these agreements, plaintiff filed suit in this Court for declaratory, injunctive and monetary relief, invoking jurisdiction under § 301 of the Labor Management Relations Act of 1947 ("Act"), 29 U.S.C. § 185.

For purposes of this motion to dismiss, defendant has essentially two arguments: first, that since the plaintiff does not and never has represented any of defendant's employees nor do the averred agreements relate to the conditions of employment of any of defendant's employees, that this Court lacks subject matter jurisdiction under § 301; and second, that if there is no jurisdiction under § 301, then plaintiff has failed to state a claim upon which relief could be granted. In addition, defendant cites *Heussner v. National Gypsum Co.,* 887 F.2d 672 (6th Cir.1989) for the proposition that the federal courts do not possess subject matter jurisdiction under § 301 in cases concerning the validity of a contract. For purposes of this motion, however, it will not be necessary for the Court to reach the issue of the validity of the contract.

Thus, it is not necessary to query whether we could or could not do so under § 301.

Plaintiff's arguments are similarly direct. First, the union argues that the agreement is a contract for purposes of § 301 jurisdiction since it was an agreement entered into between an employer and a labor union for the purpose of ending a labor dispute between the parties. They further argue that § 301 contains no requirement of employer-employee privity so that the fact that the union represents none of the employer's employees is immaterial for jurisdictional purposes. Second, plaintiff contends that labor organizations have a clear interest in upholding area wage and benefit standards so that the wages and benefits which it has negotiated for its members are not undermined by employers paying substandard wages and benefits to other employees not represented by the union. Finally, they argue that this is not a case seeking to determine the validity of a contract and, therefore, *Heussner* is not applicable.

## DISCUSSION

In deciding a motion to dismiss under Rule 12(b) Fed.R.Civ.P., the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1975), while viewing the complaint in a light most favorable to the plaintiffs. *Schuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2A J. Moore, W. Taggert & J. Wicker, *Federal Practice,* 12.08 (2d ed. 1985).

When the arguments on both sides have been distilled, essence of both amounts to this: plaintiff's claim that a

contract of any sort between an employer and a labor union aimed at promoting labor peace is all that is required for § 301 jurisdiction and defendant's claim of the necessity for the existence of an employment relationship between the parties before the conferral of such jurisdiction. In pertinent part, the statute reads:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Read literally, § 301(a) provides a federal forum for suits for violation of contracts between either an employer and a labor organization representing employees or for such suits between unions. If § 301 applies to this suit, it must necessarily fall in the first category, since this is not a suit between unions. The difficulty as this Court sees it, concerns the import and the meaning of the words "representing employees." Plaintiff relies on *Retail Clerks v. Lion Dry Goods, Inc.,* 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) for support of the contention that it is enough that it is a union which represents employees, although those employees are not those of the employer C & M. Defendants, on the other hand, insist that the clear implication of the statute is that the employees which the union is representing should be those of the employer with whom the union is having the dispute and cites *District 2 Marine Engineers Beneficial Association–Associated Maritime Officers, AFL–CIO v. Grand Bassa Tankers, Inc.,* 663 F.2d 392 (1981) as authority.

■ This Court believes that plaintiff's reliance in this regard on *Retail Clerks* is misplaced. The main thrust of that decision is its conclusion that the scope of the word "contracts" within § 301 goes beyond collective bargaining agreements and includes essentially any agreement "between employers and labor organizations significant to the maintenance of labor peace between them." *Retail Clerks,* 369 U.S. at 28, 82 S.Ct. at 548. Consistent with that opinion, this Court has no difficulty in finding that a strike settlement agreement of the type alleged by plaintiffs in the case *sub judice* would be a contract for § 301 purposes.

However, the decision in *Retail Clerks* was ambiguous with respect to the importance of the employment relationship. In this regard, all that the Court in *Retail Clerks* said, citing *United States v. Ryan,* 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956) was that jurisdiction under § 301 was not limited to majority representatives. *Id.* 369 U.S. at 29, 82 S.Ct. at 548. In this manner, the Court there disposed of defendant's contention that because petitioners were not entitled to recognition as the exclusive representatives, that jurisdiction under § 301 was automatically impossible.

This is not the same as saying that no representation at all is required. In fact, although not entitled to be termed the exclusive representatives of the employees, the union in *Retail Clerks* did represent some of the employees and the agreement in question directly affected the working conditions of those employees. *Id.* at 28, 82 S.Ct. at 548. As the Court plainly stated, the agreement "resolved a controversy arising out of, and importantly and directly affecting, the employment relationship." Thus, this Court believes that the question of the employment relationship is important to a determination of jurisdiction.

The evolution of the case law and the legislative history regarding § 301 makes one thing clear: that Congress' aim in enacting this statute was to promote industrial peace through the enforcement of agreements entered into between employers and labor unions with respect to the rights of employees by assuring access to federal courts to enforce those agreements. *See Charles Dowd Box Company v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

The most fundamental purpose of a union is to deal with the employer concerning

a variety of factors which might simply be termed employee's rights. *See* 29 U.S.C. § 152(5) and *Labor Board v. Cabot Carbon Co.*, 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959). Thus, when one thinks of "labor peace" one thinks of the relationship between the employer and his employees as represented by the union, not simply between the union and the employer. Presumably, having the union deal with the employer insures the continuance of a peaceful relationship between the employees and the employer.

The strike settlement agreement *sub judice* was not entered into as the result of a union dealing with a company on behalf of that company's employees. In fact, the company's existing employees at the time of the bargaining were argued against, for they were to be displaced by new employees who were under the union umbrella. This can hardly be seen to promote industrial peace and seems to place the employees of C & M in the position of having to join the union in order to protect their rights. This would be contrary to one of the primary purposes of the Act which allows for decisions as to unionization to remain essentially in the hands of the employees. *See* National Labor Relations Act §§ 7, 8(a)(1,3) as amended 29 U.S.C. §§ 157, 158(a)(1,3) and *Midwest Regional Joint Board, etc. v. NLRB*, 564 F.2d 434 (1977).

And yet, it remains to be resolved whether § 301 allows this to happen. Plaintiff argues that if Congress had intended to limit the applicability of § 301 to unions representing employees of the employer, it would have expressly said so. Since nothing in the statute so indicates, they urge this Court that it must not have been Congress' intention to do so. They also encourage this Court to adopt the viewpoint that the word "employee" itself, as defined elsewhere in the Act, specifically instructs that this word not be limited to a particular employer. Plaintiff's brief citing § 2(3) of The National Labor Relations Act, 29 U.S.C. § 152(3).

In this regard, however, this Court finds the defendant's primary authority, *District 2 Marine Eng., etc. v. Grand Bassa Tank-*

*ers*, 663 F.2d 392 (2nd Cir.1981) to be persuasive and well reasoned. After a review of the legislative history and case law interpreting § 2(3) and its relationship to § 301, the *Grand Bassa* court decided that those two sections were essentially unrelated to each other in a determination of jurisdiction under § 301.

The Court in *Grand Bassa* reasoned that "[t]his definition was intended to protect employees when they engage in otherwise proper concerted activities in support of employees of employers other than their own." *Id.* at 399, n. 6, citing *Eastex, Inc. v. NLRB*, 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978). Furthermore, a fair reading of the entire applicable sentence in § 2(3) necessitates inclusion of the phrase following shortly after the one on which plaintiff would have this Court rely. That phrase reads, "... and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment." 29 U.S.C. § 152, § 2(3). None of the union's employees qualify under this portion of the sentence. Thus, even if we were to assume that the employees do not have to be those of the employer, they would still have to be employees whose work had been stopped in connection with this dispute. No such employees are evidenced by the record.

The court in *Grand Bassa* found dispositive the fact that the contract in question was not with a labor organization representing any of Grand Bassa' employees nor did it relate to either the terms and conditions of employment of those employees or to the relationship between them and Grand Bassa. *Grand Bassa*, at 399. The Court rejected the notion that § 301 should embrace suits to enforce *any* labor contract aimed at promoting industrial peace. *Id.* at 400. Instead, it adopted a test requiring employer-employee privity in the promotion of that peace. *Id.* at 400. In doing so it took notice that this approach would be in accord with a Sixth Circuit case dealing with the same issue, *Service, Hospital, Nursing Home & Public Employees*

*Union v. Cleveland Tower Hotel, Inc.,* 606 F.2d 684 (6th Cir.1979) (No jurisdiction under § 301 where there was no employer-employee relationship between defendants and plaintiff union's employees).

Plaintiff also cites as authority *Sheetmetal Workers Union, Local No. 110 v. Public Service Company of Indiana,* 771 F.2d 1071, 1073 n. 1 (7th Cir.1985). The Court in *Sheetmetal Workers* concluded that jurisdiction under § 301 could not be found where the owner and general contractor could not be considered to be joint employers. Thus, the *Sheetmetal Workers* court believed that an employment relationship was necessary to confer § 301 jurisdiction. We agree.

Finally, plaintiff cites *Chicago District Council of Carpenters Pension Fund v. Strom,* 634 F.Supp. 163 (N.D.Ill.1986) for their contention that it is not necessary for the union to represent the employer's employees. Plaintiff's use of *Strom* for this proposition is unclear to this Court in light of that court's own words:

> But not every agreement to which a labor organization is a party is within § 301, for the contract must at least concern an 'employment relationship' between the parties. No one would argue § 301 confers federal subject matter jurisdiction over contracts between a union and (say) a stationer involving the purchase of office supplies.

*Id.* at 168–9. Further, although it is true that the District Court there found that the general contractor's self-interest in maintaining a work schedule and terminating a labor dispute brought the guaranty agreement under the § 301 umbrella, it is also true that the union there did represent the employees directly involved in the dispute. The court noted, in fact, that the actual employer was treated as "a mere pawn during its meeting with labor executives." *Id.* at 169. Although technically the employees were not those of the guarantor, they were at the center of the dispute between the union and the employer Strom and guarantor Sundance. No such employment relationship exists in the case at bar. In the case *sub judice,* the union represents employees not those of the employer who have nothing to do with the dispute except as possible benefactors of a positive outcome for the union.

Because no employment relationship of the type envisioned by § 301 exists in the case *sub judice,* there can be no jurisdiction under the statute. Without such jurisdiction, plaintiff has failed to state a cause of action upon which relief can be granted.

It is therefore,

ORDERED that defendant's motion to dismiss is granted. Cause dismissed with prejudice at plaintiffs' costs.